Filed 12/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NEESHAT S. KHAN, | H041608 |
|         Plaintiff, Cross-Defendant and Appellant, | (Santa Clara County Super. Ct. No. CV232004) |
|         v. | |
| MICHAEL SHIM, | |
|         Defendant, Cross-Complainant and Respondent. | |

**INTRODUCTION**

We are asked in this appeal to examine the propriety of an award of attorney fees in a dispute between parties to a contract involving the sale of a dental practice. After the plaintiff and appellant, Dr. Neeshat S. Khan (Khan), dismissed before trial her entire complaint alleging both breach of contract and tort causes of action, the trial court awarded fees to the respondent and defendant, Mr. Michael Shim (Shim), for his defense against the complaint as a whole.

As we will explain, Civil Code section 1717, subdivision (b)(2), generally bars the award of attorney fees after a pretrial voluntary dismissal for defense of contract causes of action. Insofar as the order on appeal found that Shim was the prevailing party on these claims, we reverse the order. However, we also interpret the fee provision in the parties' agreement to be broad enough to cover fees for Shim's defense against Khan's tort actions. We will therefore remand this matter to the trial court to determine what

fees can be properly awarded to Shim and to determine whether the fees can be allocated between the two types of claims.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 2010, Dr. Christine Hoang, a dentist, was terminally ill. She succumbed to her illness in March of that year. The next month, Khan began exploring the purchase of Dr. Hoang's former dental practice in Cupertino. Over the course of several months, Khan negotiated with Shim, who was Dr. Hoang's widower and the executor of her estate. The talks were fruitful, resulting in a purchase agreement for the sale of the practice, signed in July 2010 (the purchase agreement).

The purchase agreement has an attorney fee clause, which allows the prevailing party to be awarded fees if "any litigation . . . is commenced between the parties to this Contract of Sale . . . concerning its terms, interpretation or enforcement or the rights and duties of any party in relation thereto . . . ."

In September 2012, Khan filed suit against Shim individually and as executor of Dr. Hoang's estate. Khan sued Shim under five causes of action: breach of contract, fraud, concealment, negligent misrepresentation, and rescission.

The breach of contract claim was based on Khan's allegations that Shim had failed to comply with various warranties in the agreement for the sale of his wife's dental practice, including that 1) none of the records provided to Khan about the practice contained any untrue statement or material omission; 2) that the practice was in compliance with applicable laws and regulations; 3) that the practice's patients and insurance companies had been properly billed and that billing requirements for insurance companies and government agencies had been followed; 4) that the practice had not billed for any services for which the practice was not entitled to compensation; 5) that the practice had not, as a usual or customary practice, waived co-payments or deductibles; 6) the practice's records were complete and accurate in all material respects, and; 7) the

2

practice had not increased any employee's salary or promised to do so after April 1, 2010. Khan also sought rescission of the purchase agreement.

The fraud claim was essentially based on the same set of facts as the breach of contract claim, including the same essential allegations phrased as acts of fraud rather than breaches of contractual warranties. The "[c]oncealment" and negligent misrepresentation claims, in turn, are based on essentially the same allegations as the fraud claims.

Shim responded, filing a cross-complaint against Khan, alleging, among other things, that Khan had failed to collect and remit accounts receivable, failed to provide proper accounting for those receivables, and that Khan herself had violated various warranties and representations in the agreement. (Shim's cross-complaint included claims for breach of contract and various torts, including fraudulent concealment.)

A crucial fact for our analysis is that, on February 10, 2014, before trial, Khan voluntarily dismissed her entire complaint without prejudice. Ten days later, on February 20, the case proceeded to a bench trial solely on Shim's cross complaint. In its statement of decision, dated May 16, 2014, the trial court found for Khan on all causes of action stated against her in Shim's cross-complaint.

In July 2014, Shim filed a motion for attorney fees against Khan. Shim's brief to the trial court in support of his motion for fees seemed to acknowledge the need to argue that the fee provision in the purchase agreement provided a basis for his fee request. But Shim also argued that the trial court had "ultimate discretion" when awarding attorney fees, "not only as to the amount but also in the choice of statutory basis for the award and in the identification of the prevailing party."

3

In her opposition, Khan asserted that, because she had dismissed her complaint prior to trial, Civil Code section 1717, subdivision (b)(2),[1] barred the recovery of any attorney fees spent by Shim in defending the contract claim and that the fee provision in the purchase agreement was not broad enough to cover torts. Khan also argued that Shim's appeal to the court's discretion and his arguments about "litigation objectives" did not override the impact of her voluntary dismissal or the language of the fee provision.

In an order dated October 8, 2014, the trial court found as follows: "On the Complaint Shim is the prevailing party. Code of Civil Procedure section 1032, subdivision (a)(4) states, " 'Prevailing party' includes . . . a defendant where neither plaintiff nor defendant obtains any relief."[2] A judgment including the amount of fees awarded was filed on October 24, which appears to indicate that Shim was the prevailing party on all of the claims brought by Khan in his complaint. An amended judgment was filed on October 29. This judgment states that "Shim is the prevailing party on Khan's dismissed Complaint, pursuant to CCP 1032(a)(4)." This timely appeal followed.

## DISCUSSION

Khan raises two issues on appeal. First, she asserts that the finding that Shim was the prevailing party on the complaint as a whole cannot be affirmed because section 1717(b)(2) bars a finding that Shim was the prevailing party on the contract claims. Khan also asserts that the fee provision in the purchase agreement was not broad enough to cover fees related to tort claims. As we shall explain, we agree with Khan on

---

[1] Further statutory references are to the Civil Code unless otherwise noted. Because we must frequently refer to section 1717, subdivision (b)(2), we will simply call it "section 1717(b)(2)."

[2] The attorney fee amount on the complaint was determined to be $140,803.25 and costs at $2,539.94, for a total of $143,343.19. Although Khan had been awarded attorney fees on Shim's unsuccessful cross-complaint of $90,325.00, and costs of $6,731.55 (for a total of $97,056,55) she was ordered to pay Shim the difference between the two amounts, which was calculated at $46,286.64.

4

her statutory argument and disagree with her on the proper interpretation of the parties' fee provision.

## I. *Standard of Review*

Because our determination of whether the trial court's fee award violated section 1717(b)(2) involves issues of law, our review is de novo. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 (*Goodman*).) Our interpretation of the contractual attorney fee provision at issue, for which neither party has offered extrinsic evidence as an aid in interpretation, is also reviewed de novo. (*Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1161.)[3]

## II. *The Legal Terrain: Contractual Fee Awards and Voluntary Dismissals*

Before we turn to Khan's specific arguments on appeal, we offer a brief discussion of the rules governing our analysis. This appeal, involving a contractual attorney fee provision and a voluntary pre-trial dismissal, implicates several potentially overlapping statutes which have been subjected to exhaustive analysis by the Supreme Court.

We will begin with the very basics. In England, "since 1607, courts have been empowered to award attorney fees to the successful litigant." (*Java Oil Ltd. v. Sullivan* (2008) 168 Cal.App.4th 1178, 1189.) The "American rule," however, is that each side pays its own attorney fees, win or lose. (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504.) Of course, the American rule has important exceptions. As

---

[3] The parties agree that the questions Khan raises on appeal are to be reviewed under the de novo standard. Shim, however, seems to assert that we should apply the abuse of discretion standard to what he calls a subset question—namely, whether there was some error in the trial court's determination that Shim was the prevailing party under Code of Civil Procedure section 1032 *other than* Khan's argument that the trial court misinterpreted the parties' fee provision. While it is true that, generally, a trial court's determination that a litigant is a prevailing party is reviewed for abuse of discretion, it is equally well-settled that, if the challenge to that determination is solely one of law, the de novo standard applies. (See *Goodman, supra,* 47 Cal.4th at p. 1332.) There is no occasion to apply the abuse of discretion standard in our review of the questions actually raised by Khan.

California's codification states, attorney fees may be payable to the opposing party if the parties have agreed to pay such fees or if another statute independently provides for them. (Code Civ. Proc., § 1021.)

Any contractual attorney fee provision, however, has to be interpreted in light of section 1717, which was originally enacted in order to limit "unfairly one-sided" attorney fee provisions in contracts. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 602 (*Santisas*).)[4] In a series of steps, the scope and import of section 1717 has been broadened beyond its original purpose. In 1978, for example, our Supreme Court interpreted section 1717 to include the rule that "when the plaintiff voluntarily dismisses before trial," there is no prevailing party under the statute. (*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 223 (*Olen*).) After *Olen* was decided, the statute was amended by the addition of subsection (b)(2) of section 1717, which provides that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." (§ 1717, subd. (b)(2); see also *Santisas, supra,* 17 Cal.4th at p. 602.)

In addition, in 1998, the Supreme Court made clear that section 1717 does not just apply to contracts with forbidden one-sided provisions but that it applies to fee provisions (such as the one involved here) in "contracts containing reciprocal . . . attorney fee provisions . . . authorizing recovery of attorney fees by a 'prevailing party.' " (*Santisas, supra,* 17 Cal.4th at pp. 614-616.)[5] So section 1717, which was enacted to ban unfair

---

[4] The first paragraph of section 1717 reads as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

[5] This was based on a 1981 amendment which broadened the scope of section 1717, "in the statute's own words [to], 'where the contract specifically provides that attorney's fees and costs . . . shall be awarded *either to one of the parties or to the*

6

one-sided fees provisions, has been expanded over time to cover reciprocal fee agreements as well and to ban the award of attorney fees for certain claims if the complaining party files a voluntary dismissal before trial. (§ 1717, subd. (b)(2).) This ban, moreover, "overid[es] and nullif[ies] conflicting contractual provisions, such as provisions expressly allowing recovery of attorney fees in the event of voluntary dismissal or defining 'prevailing party' as including parties in whose favor a dismissal has been entered." (*Santisas, supra,* 17 Cal.4th at p. 617.) )

But section 1717 has a very important limitation. The statute, including its ban on the award of fees in the event of a pre-trial dismissal, applies only to "action[s] on a contract." (§ 1717, subd. (a).) What happens where, as here, a party brings both contract claims and tort causes of action as well and then dismisses the entire complaint before trial? In *Santisas,* the Supreme Court was asked to decide whether a defendant could recover any fees from a plaintiff who had "voluntarily dismissed before trial an action asserting both tort and contract claims, all of which [arose] from a . . . contract containing a broadly worded attorney fee provision . . . . [I]s any or all of such recovery precluded by either Civil Code section 1717 or [the] decision in *Olen, supra,* 21 Cal.3d 218?" (*Santisas, supra,* 17 Cal.4th at p. 602.)

The court held that neither section 1717 nor the *Olen* decision created a general rule against enforcing contractual attorney fee provisions after a pretrial dismissal. (*Santisas, supra,* 17 Cal.4th at pp. 619, 623.) In analyzing whether a pretrial dismissal allows for the recovery of attorney fees for noncontractual claims, the Supreme Court noted that under Code of Civil Procedure section 1032, subdivision (a)(4), the definition of " 'prevailing party' " includes " 'a defendant in whose favor a dismissal is entered,' " which could apply to voluntary pretrial dismissals. (See *Santisas, supra,* 17 Cal.4th at

---

*prevailing party . . .'* (§ 1717, subd. (a), italics added, see Stats. 1981, ch. 1988, § 1, p. 3399)." (*Santisas, supra,* 17 Cal.4th at p. 614.)

7

p. 606.)  That statute further provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  (Code Civ. Proc., § 1032, subd. (b).)  "Costs," moreover, includes attorney fees "when authorized by . . . [c]ontract."  (Code Civ. Proc., § 1033.5, subd. (a)(10)(A).)

Therefore, the Supreme Court concluded, whether a party which has voluntarily dismissed its tort claims before trial will be liable for its opponent's attorney fees spent in defending those tort claims is determined by the contract, and the fee provision, "*depending on its wording*, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating the [noncontractual] causes of action."  (*Santisas, supra,* 17 Cal.4th at p. 618, italics added.)

So, the rule to be applied here, developed through the decades with various twists and turns, is as follows:  Insofar as Shim seeks to recover attorney fees for his defense against Khan's contract claims, this recovery is prohibited by section 1717(b)(2); insofar as Shim seeks to recover attorney fees for his defense against Khan's tort claims, that depends on the wording of the parties' fee provision and whether it is broad enough to encompass torts.[6]  Having summarized the applicable law, we now turn to Khan's arguments that the trial court erred.

---

[6] The parties appear to agree that Khan's claims for breach of contract and for rescission should be deemed "on a contract" for purposes of section 1717(b)(2) and that her fraud, concealment, and negligent misrepresentation claims should be considered outside the statute's scope.  Although it has been noted that the exact reach of the term, "on a contract," can be difficult to discern, one test which has been "distil[led]" from the case law is to ask whether "(1) the action (or cause of action) 'involves' an agreement in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241-242.)  In other words, a defining characteristic of an action "on a contract" is that the cause of action must "seek[] to define or interpret [the contract's] terms or to determine or enforce a party's rights or duties under the agreement." (*Ibid.*)  The parties' position that Khan's breach of contract and rescission claims fall within the scope of

### III. *Shim Was Not the Prevailing Party on Khan's Entire Complaint*

Khan first argues that the finding that Shim was the "prevailing party on Khan's dismissed Complaint, pursuant to [Code of Civil Procedure § 1032, subd. (a)(4)]" should not be affirmed in light of section 1717(b)(2). We agree. Because of Khan's voluntary dismissal, section 1717(b)(2) requires a finding that there is no prevailing party on the contract claims. (*Santisas, supra,* 17 Cal.4th at pp. 617-618.) On the tort claims, the analysis in *Santisas* requires an examination of the contractual fee provision to determine if the language is broad enough to encompass them. Because this distinction between the two types of claims is required, the general holding that Shim was the prevailing party on the complaint a whole cannot be affirmed.

Shim argues that we should affirm the trial court's judgment because, even if there were an error related to section 1717(b)(2), that error is not evident from the record. In support of this point, Shim asserts that, because a majority of the causes of action in the complaint were tort-based, the trial court could have granted fees under section 1032 with regard to these claims.

We do not agree. First, the trial court's finding that Shim "is the prevailing party on Khan's dismissed Complaint" can only be read as a finding that Shim was the prevailing party, not on particular causes of action, but on the dismissed complaint as a whole. Because the complaint included the contract claims, the trial court's statement necessarily includes the finding that Shim was the prevailing party for these claims.

In addition, Shim provides no authority for his argument that section 1717(b)(2) can be disregarded because the "majority" of Khan's claims were tort-based—the Legislature's statutory mandate cannot be trumped by the simple expedient of adding up the tort claims in a complaint to see if they outnumber the contract claims. Finally, it is a

---

section 1717(b)(2) is in line with relevant authority. (See *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 841 [rescission claims deemed to be within scope of section 1717].)

bit disingenuous for Shim to assert on appeal that no error is apparent from the trial court's orders when he asserted below an argument that seems to have invited the very error he now claims was not made, that whatever section 1717(b)(2) might say, the trial court retains the "ultimate discretion" when awarding attorney fees, "not only as to the amount but also in the choice of statutory basis for the award and in the identification of the prevailing party." As *Santisas* makes clear, Code of Civil Procedure section 1032 does not act to override section 1717, it merely works in tandem with it, by providing for fees for other non-contract claims if the agreement is broadly phrased enough to cover those claim. (*Santisas, supra,* 17 Cal.4th at pp. 618-619.)[7] Because the finding that that Shim was the prevailing party on Khan's dismissed complaint as a whole cannot be affirmed in light of section 1717(b)(2), the judgment is reversed on this point.

## IV. *The Fee Provision is Broad Enough to Cover Torts*

We now turn to the question of whether Shim was entitled to recover fees for his defense against Khan's tort causes of action. (See *Santisas, supra,* 17 Cal.4th at pp. 617-618.) The fee provision in the parties' purchase agreement reads, in relevant part and with emphasis added, as follows: "If at any time after the Close of Sale, *any litigation* or arbitration is commenced between the parties to this Contract of Sale . . . *concerning its terms, interpretation or enforcement or the rights and duties of any party in relation thereto*, the *party* or parties *prevailing* in such litigation or arbitration shall be entitled, in addition to such other relief as may be granted to them, to a reasonable sum as and for their attorney fees incurred in such litigation or arbitration . . . ."

" 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.)

---

[7] Shim's argument on this point is entirely separate from the issue of whether it was (or will be) possible to allocate the fees spent by Shim between the contract claims and the tort claims. This issue is discussed in more detail below in our discussion about remand.

10

Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]' " (*Santisas, supra,* 17 Cal.4th at p. 608.) As neither party points us to any extrinsic evidence that would affect the meaning of the provision at issue, we will apply the ordinary and popular meaning of the terms used by the parties.

First, a bit of grammar: the pronoun "its" as used in the fee provision clearly refers to the "Contract of Sale," as the contract is the only logical antecedent in the sentence. In addition, the word "thereto" in the phrase "rights and duties of any party in relation thereto," is most naturally read to refer to rights and duties of parties in relation to the "Contract of Sale," rather than to the other antecedent candidates, such as the contract's terms, interpretation or enforcement. We therefore believe that the fee provision is most sensibly interpreted as providing for the award of fees in any litigation "concerning [the contract's] terms," "concerning . . . [the contract's] interpretation," "concerning . . . [the contract's] enforcement," or "concerning . . . the rights and duties of any party in relation [to the contract]."

In their effort to convince us that Khan's tort actions are or are not encompassed within the fee provision, both parties point us to prior cases dealing with similar interpretation controversies. On the one hand are those cases interpreting broadly worded clauses, which Shim, not surprisingly, argues are analogous to the fee provision here. In *Santisas,* for example, a home purchase agreement fee provision covered claims " 'arising out of the execution of this agreement or the sale' " and the Supreme Court interpreted it as being broad enough to cover tort claims. (*Santisas, supra,* 17 Cal.4th at p. 608; see also *Palmer v. Shawback* (1993) 17 Cal.App.4th 296, 299 [construing same

11

clause as in *Santisas* and arriving at same result].)  So too were a fee provision covering " 'any action or proceeding arising out of this agreement' " (*Lerner v. Ward* (1993) 13 Cal.App.4th 155, 159) and one allowing for fees " '[i]f this Agreement gives rise to a lawsuit or other legal proceeding between any of the parties hereto.' " (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1340.)  A lease providing for fees to the prevailing party " '[i]f [a] civil action is instituted *in connection with* this Agreement . . .' " was also interpreted to cover tort claims (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277) as was a lease allowing fees for " 'any legal action brought by either party to enforce the terms hereof *or relating to the demised premises*.' " (*Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1799, italics added.)

On the other side of the ledger are cases involving narrower contracts.  Rather than using broad phrases, such as "arising from," these cases typically interpret provisions referring to the award of fees in an action to "enforce" the agreement at issue.  For example, where an agreement allowed for the recovery of fees in " 'an action or proceeding to enforce the terms hereof or declare rights hereunder,' " it was interpreted as excluding tort claims (*Exxess Electronixx v. Heger Realty Co.* (1998) 64 Cal.App.4th 698, 702-703, 708-709 (*Exxess*)), as was a provision stating that fees could be awarded if " 'legal action or arbitration is necessary to enforce the terms of this Agreement . . . .' " (*Loube v. Loube* (1998) 64 Cal.App.4th 421, 429.)  Likewise, the language, " '[i]n the event action is brought to enforce the terms of this [Release], the prevailing party shall be paid his reasonable attorney[] fees' " was also interpreted as applying only to contract claims and not to torts.  (*Gil v. Mansano* (2004) 121 Cal.App.4th 739, 742.)

Our responsibility here, of course, is to interpret the contract that these parties agreed to—not to mechanistically decide the issue based on whether we consider the fee provision to be broad or narrow in a general sense.  Prior cases, however, do serve to highlight how the parties could have worded their agreement, but chose not to.  Most tellingly, the prior cases point to the frailty of Khan's main argument urging us to adopt a

12

narrow construction.  Pointing to the language in the fee provision here, Khan asserts that tort actions do not establish the terms of a contract, do not enforce a contract, do not interpret it, and do not declare the rights and duties of parties under the contract.  (See, *Exxess, supra,* 64 Cal.App.4th at p. 709 [where a fee provision applies to action to "enforce" the contract, tort claims not included].)  True enough.  Had the parties decided to limit the recovery of fees to such actions, they could easily have negotiated a fee provision similar to the one in *Exxess,* which allowed fees for " 'an action or proceeding to enforce the terms hereof or declare rights hereunder.' "  (*Id.* at pp. 708-709.)

They instead chose much different language.  They decided to allow for the recovery of fees for "any litigation," "concerning" the purchase agreement's terms, its interpretation or its enforcement, or any litigation concerning the rights and duties of the parties in relation to the contract.  "Concerning" is defined as "relating to: regarding, respecting, about."  (Webster's 3d New Internat. Dict. (1993) p. 470 [capitalization altered].)  Notably, Khan criticizes Shim for concentrating too much on this word and its breadth, but does not offer a sensible construction which takes into account that this word actually appears in the fee provision and cannot be read out of it.  Contrary to Khan's assertion otherwise, allowing the word "concerning" to play its proper role in the interpretation of the agreement is not to take the word out of context to contort the meaning of the provision, it is merely to interpret the fee provision as it was drafted.[8]

---

[8]  Khan relies on *Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1069, to argue that a word's broadest possible meaning should not necessarily be used to interpret a contract.  That case does not help Khan.  In deciding whether the " 'wrongful eviction' " portion of a standard commercial general liability policy's " 'personal injury' coverage" applied to organizations and not to natural persons, the court relied on the fact that the policy elsewhere used the word " 'person' " to refer only to natural persons.  (*Id.* at pp. 1062-1063.)  The case merely stands for the proposition that a contract's usage of a term must be based on context, a context which includes the remainder of the contract.  (*Id.* at pp. 1069-1070.)  As stated, however, Khan does not provide an interpretation of the fee provision which actually uses the word "concerning" in its context.

13

Each of the tort claims asserted by Khan easily fit within the fee provision's scope. In her concealment claim, for example, Khan specifically alleged that Shim had "concealed from [her] the truth about the representations" made by Shim in the warranties section of the purchase agreement—Khan even expressly incorporated paragraph 18 of her complaint (which explicitly listed the *contractual* warranties Khan alleged were false when made) into her concealment claim. That this claim "concerns" the terms of the purchase agreement seems unquestionable.

The same goes for Khan's fraud and negligent misrepresentation claims. In her breach of contract claim, for example, Khan listed the " 'Seller's Warranties' " that were violated, including those that stated that the practice had properly billed patients, that it had not customarily waived co-payments and deductibles, that it had no increased (or promised to increase) any salaries, that practice's records did not contain untrue statements or material omissions and that the practice had complied with all applicable laws and regulations.

In her fraud claim, Khan alleged that Shim, starting from June 2010 and continuing up to the "execution of the Agreement," made a series of misrepresentations. Shim, it was alleged, had told Khan 1) that the dental practice of sale had "at least 1,800 'active patients"; 2) that none of the records or documents concerning the practice contained any untrue statement or material omission; 3) that the practice was in compliance with all applicable laws; 4) that both patients and insurance companies had been properly billed in accordance with rules and regulations of insurance companies and governmental agencies; 5) that the practice had not billed for any services for which the practice was not entitled to compensation; 6) that co-payments or deductibles had not been waived as a usual or customary practice; 7) that the practice's records were complete and accurate in all material respects, and; 8) that the practice had not, after April 1, 2010, increase any employee's salary or promise to do so. There is, therefore, a

substantial overlap between the fraud claim and the contract claim in that the gist of the fraud claim is that Shim misrepresented that the warranties in the contract were true.

These representations, Khan alleged, were knowingly false when made and had they not been made, "Khan would not have signed the Agreement or bought" the practice. The negligent misrepresentation claim relied upon essentially the same allegations as the fraud claim and also reiterated that, had Khan known the truth, she would not have entered into the purchase agreement. All of these claims "concern" the terms of the agreement as well.

To be clear, Khan's torts were not, of course, breach of contract claims, nor did they directly seek to enforce the contract. (See *Stout v. Turney* (1978) 22 Cal.3d 718, 730 [a "tort action for fraud arising out of a contract is not . . . an action 'on a contract' within the meaning of" section 1717].) But because they were directly tied to the allegations that certain of the terms (Shim's warranties) were false, these tort claims easily fall within the reach of the fee provision covering "any litigation . . . concerning [the contract's] terms . . . ."

## V.     *Remand to the Trial Court is Necessary*

In light of our determination that the trial court's award of fees to Shim on the entirety of Khan's complaint erroneously disregarded section 1717(b)(2) and our conclusion that the parties' fee agreement is in fact broad enough to allow for recovery of attorney fees spent by Shim in defense of the non-contract claims, we will follow the procedure set forth in *Santisas* and remand the matter to the trial court for proper application of the relevant law and the proper interpretation of the fee provision. (*Santisas, supra,* 17 Cal.4th at p. 623, fn. 10.) This will require the trial court to address the issue of allocating the fees between the causes of action. (*Ibid.*) Neither party brought up the allocation issue below and the issue is only mentioned in passing in the parties' briefs on appeal, with Kahn arguing that we should remand because "Shim did not parse out fees related solely to the tort claim" and Shim arguing that we should

15

remand "with instructions to clarify that the attorney fees award was solely on the tort causes of action . . . ."

Perhaps it could be said that the onus of that failure should rest with Khan—in the trial court she did not argue that the fees should be allocated between the contract claims and the tort claims, instead putting all of her eggs in the contract interpretation basket. This is not a case, however, in which a party conceded in the trial court that certain fees were not recoverable and did not seek an allocation. (See *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943, 950-951 [declining to remand fee award for allocation in light of party's failure to raise issue below even though the party seeking the allocation knew that certain fees were precluded by section 1717].) Instead, Khan has argued consistently that the fee provision did not entitle Shim to recover fees for defending the tort claims. We will remand the matter to the trial court.

In *Santisas,* despite remanding, the Supreme Court expressly declined to decide how such allocation should be accomplished because the issue had not been raised in the Court of Appeal or briefed by the parties. (*Santisas, supra,* 17 Cal.4th at p. 623, fn. 10.) For the same reason, we too will not opine on issues not raised and briefed by the parties. We will draw the parties' attention, however, to the Supreme Court's citation in *Santisas* to *Reynolds Metal Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130 (*Reynolds*). (See *Santisas, supra,* 17 Cal.4th at p. 623, fn. 10.) In *Reynolds,* the Supreme Court noted that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds, supra,* 25 Cal.3d at pp. 129-130.) Whether the fees for the tort causes of action and the contract causes of action are too intertwined to be allocated is a question to be answered on remand. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1603-1605.)

Finally, Shim has requested that we award him eligible fees he has spent on this appeal (although he does so without any supporting details or declarations as to the

16

amount he is seeking). "Although we have the power to appraise and fix attorney fees on appeal, we deem it [here] the better practice to remand the cause to the trial court to determine the appropriate amount of such fees." (*Amtower v. Photon Dynamics, supra,* 158 Cal.App.4th at p. 1610, citing *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134-1135.)

## DISPOSITION

The trial court's judgment is reversed insofar as it declared Shim to be the prevailing party on Khan's complaint as a whole, including Khan's contract causes of action. The matter is otherwise remanded to the trial court for further proceedings consistent with this opinion. Each party is to bear his or her own costs on appeal.

_____

                                  RUSHING, P. J.

WE CONCUR:

_____

       GROVER, J.

_____

       WALSH, J.[*]

*Khan v. Shim*
**H041608**

---

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 7 of the California Constitution.

Trial Court:                                              Santa Clara County Superior Court
                                                          Superior Court No.: CV232004


Trial Judge:                                              The Honorable Diane Ritchie



Attorneys for Plaintiff, Cross-Defendant and             Brown Wegner McNamara LLP
Appellant Neeshat S. Khan:
                                                          Stephen M. McNamara



Attorneys for Defendants, Cross Complainant              The Goldman Law Firm
and Respondent Michael Shim:
                                                          Ronald P. Goldman
                                                          Ronald V. Good, Jr.
                                                          Kevin Kelly


*Khan v. Shim*
**H041608**