Filed 4/17/23  Davis v. Philpott Meeks CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| LUCY DAVIS, | B316618 |
| Cross-complainant and Respondent, | (Los Angeles County Super. Ct. No. 18STUD05169) |
| v. | |
| PHILPOTT MEEKS, LP, | |
| Cross-respondent and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed.

Buchalter and Robert M. Dato for Cross-defendant and Appellant.

Sauer & Wagner, Gerald L. Sauer and Gregory P. Barchie for Cross-complainant and Respondent.

Lucy Davis filed an unlawful detainer complaint against tenants living on property owned through Davis's personal trust, the 512 North Gower Street Trust. The tenants filed a cross-complaint for premises liability against Brian Feldman, the trustee and Davis's business manager, and Davis. In response, Feldman filed a cross-complaint against Davis for express and implied indemnity. Davis then filed a cross-complaint against Feldman and thereafter an amended cross-complaint against Feldman and his employer, Philpott Meeks, LP,[1] for equitable/implied indemnity and declaratory relief to resolve a dispute concerning the scope of the indemnification provision in the business management services agreement between Davis and Philpott. Davis also asserted claims for breach of fiduciary duty and fraud.

Davis, Feldman and Philpott subsequently entered into a tolling agreement pursuant to which Davis and Feldman dismissed their cross-complaints without prejudice and tolled for one year any statutes of limitations on their claims. Philpott then moved for an award of attorney fees based on the attorney fee provision in the management agreement between Davis and the firm, contending it was the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4), and the parties' agreement. The trial court denied the motion. We affirm.

---

[1] Philpott Meeks, LP is the successor to PM, LLC, which was named as the cross-defendant in the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The 512 North Gower Street Trust and the Davis-Philpott Business Management Services Agreements*

Davis created the 512 North Gower Street Trust in March 2013 to hold residential property in Larchmont Village previously owned by Davis in her own name. The trust agreement was signed by Davis as grantor and Feldman as trustee. Feldman was at the time employed by Philpott's predecessor in interest, which in September 2012 had entered into a written engagement agreement with Davis, an actor, to provide business management services.

In August or September 2018 Davis and Philpott signed a new management services letter agreement. The agreement contained an indemnification provision pursuant to which Davis agreed to "indemnity and hold harmless [Philpott], and each of its partners, members, employees, representatives or agents, from and against any and all losses, claims, and liabilities, including reasonable costs and attorneys' fees, arising from, or in connection with, the performance of our services under this Agreement which are not the result of our gross negligence or willful misconduct."

The 2018 management services agreement also contained a provision requiring arbitration of all disputes between the parties. However, the agreement further provided, "[I]f either party files a claim in court in any jurisdiction that could have been resolved through binding arbitration, the filing party must immediately pay to the non-filing party the sum of $500,000 as a deposit for the costs in defending the court action." The agreement continued, "The prevailing party in any arbitration or litigation arising out of or relating to our engagement, this

3

Agreement, any obligation created by this Agreement, and/or the performance or failure to perform services (including, without limitation, claims of breach of duty or professional negligence), shall be entitled to recover reasonable attorneys' fees and costs (whether or not such fees and costs are recoverable pursuant to the California Code of Civil Procedure or federal law) as may be incurred in connection with either obtaining or collecting any judgment and/or arbitration award, in addition to any other relief to which that party may be entitled."

2. *The Harmon Litigation*

Madeleine Harmon and Vincent Cammarata leased the Larchmont Village property in November 2017. Davis filed an unlawful detainer action to evict the tenants in May 2018. In January 2019 Harmon and Cammarata filed a cross-complaint against Davis and Feldman for personal injuries allegedly caused by Davis's and Feldman's failure to properly maintain the property.[2]

On August 13, 2019 Feldman filed a cross-complaint for indemnity against Davis (and several others), alleging that Davis had agreed to indemnify Feldman in the March 2013 trust document against all claims relating to his actions as trustee, which included the allegations made by Harmon and Cammarata

---

[2] In July 2018, approximately two months after Davis filed the unlawful detainer action (and before Davis and Philpott entered their new management services agreement), counsel for Harmon and Cammarata notified Davis, through Feldman, that Harmon and Cammarata intended to sue Davis and Feldman for personal injuries and economic damages based on their failure to properly maintain the property. A draft complaint was enclosed with counsel's letter.

4

in their cross-complaint. On October 15, 2019 Davis filed a cross-complaint against Feldman for equitable indemnity, breach of fiduciary duty and negligence, alleging Feldman was responsible for, but failed to take, all reasonable steps to manage and operate the property as a rental residence and, if Harmon and Cammarata suffered any injuries, they were caused in whole or in part by Feldman's breach of fiduciary duty and negligence.

Davis filed a first amended cross-complaint on December 2, 2019, which added Philpott as a cross-defendant and requested a declaration that the 2018 management services agreement did not (as Feldman and Philpott contended) release Feldman and Philpott from any liability for the claims asserted by Harmon and Cammarata or in Davis's cross-complaint. The first amended cross-complaint reasserted Davis's claims against Feldman for equitable indemnity, breach of fiduciary duty and negligence and added new causes of action against Feldman and Philpott for breach of fiduciary duty and constructive fraud "in the event that the [2018 management services agreement] is found (1) to apply to the Trust and Feldman's performance as trustee of the Trust, (2) to have released Feldman from, and/or limited Feldman's liability for claims asserted in this Cross-Cross-Complaint or that arise from the Harmon Cross-Complaint or Feldman's performance as trustee of the Trust[,] and/or (3) to have released Feldman and Philpott Meeks from, and/or limited Feldman's or Philpott Meek's liability for, for breach of duty arising from the performance of prior business management services for Davis." These additional causes of action alleged, when presenting the new management services agreement to Davis after Harmon and Cammarata's counsel had threatened a lawsuit over the condition of the property in July 2018, Feldman did not disclose the

5

releases in the agreement applied to the trust or Feldman's services as trustee.[3]

On October 27, 2020, following a mediation session for the Harmon litigation, Davis, Feldman and Philpott entered into a tolling agreement covering all claims Davis might have against Feldman or Philpot and Feldman or Philpott might have against Davis that were or could be asserted in the Harmon litigation. Pursuant to the agreement all defenses based on lapse of time were tolled from October 27, 2020 through October 26, 2021. The agreement further provided that Feldman would dismiss without prejudice his cross-complaint against Davis and Davis would dismiss without prejudice her amended cross-complaint against Feldman and Philpott in the Harmon litigation.[4] In a separate paragraph titled "Exculpatory Provision," the agreement stated, "Nothing herein is intended to reflect upon the merits of any claim or defense by any Party and shall not be deemed to be admission of liability or waiver of any kind or nature whatsoever." There was no mention of attorney fees in the agreement.

Davis's request for dismissal was filed October 30, 2020, and the dismissal was entered on November 5, 2020.

3. *The Motion for Attorney Fees*

On April 23, 2021 Philpott moved for an award of attorney fees in excess of $300,000 based on the fee provision in the

---

[3] Davis requested and received leave of court to file a second amended cross-complaint containing the same causes of action after Philpott's counsel asserted court permission was needed to add Philpott as a party to Davis's cross-complaint.

[4] The parties provided their dismissals would stay all pending discovery among them.

6

parties' 2018 management services agreement, which authorized a fee award to the prevailing party in any arbitration or litigation "arising out of or relating to" Philpott's engagement by Davis, the parties' agreement or obligations created by the agreement, "and/or the performance or failure to perform services." Citing Code of Civil Procedure section 1032, subdivision (a)(4),[5] Philpott asserted it was the prevailing party under that costs statute because it was a "defendant in whose favor a dismissal is entered." Then, acknowledging the term "prevailing party" was not defined in the 2018 agreement, Philpott argued, citing *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, the term should be interpreted in its "ordinary or popular sense" and insisted a defendant who secured a dismissal, as it had, achieved its goals in the litigation. Finally, Philpott argued the 2018 agreement's fee provision was sufficiently broad to include Davis's tort claims and, as such, its recovery of fees was not barred by Civil Code section 1717, subdivision (b)(2), which precludes an award of fees incurred in defending contract claims that have been voluntarily dismissed.[6]

In her opposition Davis argued the "main thrust" of her cross-complaint insofar as it related to Philpott was "on the contract," explaining she primarily sought a judicial determination that the parties' 2018 agreement had no application to the trust and did not release or limit Feldman's

---

[5] Statutory references are to this code unless otherwise stated.

[6] Civil Code section 1717, subdivision (b)(2), first paragraph, provides, "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

7

liability for the claims asserted by Harmon and Cammarata and only alternatively alleged contingent causes of action for breach of fiduciary duty and fraud if it was determined that the releases in the 2018 agreement applied to the trust.  Davis also contended, even if a fee award was not barred by Civil Code section 1717, based on a pragmatic interpretation of the term prevailing party in the parties' agreement, Philpott did not defeat Davis's cross-claims.  Rather, the parties' tolling agreement, pursuant to which both Davis and Feldman dismissed cross-complaints, expressly provided the dismissals did not reflect on the merits of the claims, creating a draw in which neither side prevailed.

The trial court denied Philpott's motion.  The court quoted the first paragraph of  Civil Code section 1717, subdivision (b)(2), and then ruled, "Moreover, while Defendant argues it is the prevailing party because it achieved the result it wanted, the tolling agreement specifically states the dismissal has nothing to do with the merits.  Plaintiff may still refile and therefore Defendant is not 'free' from Plaintiff's claims."

## DISCUSSION

1. *Standard of Review*

A determination of the legal basis for an attorney fee award is a question of law reviewed de novo when the issue is one of statutory construction (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air Enterprises*) [de novo review of a trial court order concerning attorney fees is warranted when the determination whether the criteria for an award of attorney fees have been satisfied amounts to statutory construction]) or requires interpretation of a contract where no extrinsic evidence has been offered on that question

8

(*Khan v. Shim* (2016) 7 Cal.App.5th 49, 55 [interpretation of a contractual fee provision for which no party has offered extrinsic evidence as an aid in interpretation is reviewed de novo]; *Casella v. SouthWest Dealer Services, Inc*. (2007) 157 Cal.App.4th 1127, 1161 ["[w]hen the facts are not in dispute and the right to recover attorney fees depends upon the interpretation of a contract and no extrinsic evidence is offered to interpret the contract, we review the ruling de novo"]).  In all other contexts the propriety or amount of fees to be awarded is generally a discretionary decision for the trial court that we review for an abuse of that discretion.  (*Mountain Air Enterprises*, at p. 751.)

  2. *Governing Law*

   a. *The scope of the fee agreement*

  Section 1033.5, subdivision (a)(10)(A), authorizes the trial court to award reasonable attorney fees as costs under section 1032 when authorized by a contract between the parties. (See § 1021 ["[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties"]; *Mountain Air Enterprises*, *supra*, 3 Cal.5th at p. 751 ["section 1021 permits parties to '"contract out" of the American rule' by executing an agreement that allocates attorney fees"].)  ""'[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.'"'"  (*Mountain Air Enterprises*, at p. 751; accord, *Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 608 ["[i]f a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims"]; see *Maynard*

9

*v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 991-992 ["[w]hile it is clear that an attorney fee provision may authorize an award of fees only to the party who prevails on a claim to enforce the terms of the contract containing the provision, it is equally clear that an attorney fee provision need not be so limited"].)

In determining the breadth of a contractual attorney fee provision, we necessarily focus on the words the parties elected to use. (See *Hom v. Petrou* (2021) 67 Cal.App.5th 459, 465 ["'the question of whether to award attorneys' fees turns on the language of the contractual attorneys' fee provision, i.e., whether the party seeking fees has "prevailed" within the meaning of the provision and whether the type of claim is within the scope of the provision'"]; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708 [same]; see also *Santisas v. Goodin, supra*, 17 Cal.4th at p. 602 ["[w]hether attorney fees incurred in defending tort or other noncontract claims are recoverable after a pretrial dismissal depends upon the terms of the contractual attorney fee provision"].) Well-developed case law considering this issue provides clear guidance in parsing the parties' language.

On the one hand, attorney fee provisions held to be broad enough to cover tort or other noncontractual claims have referred to claims "arising out of the execution of this agreement" (*Santisas v. Goodin, supra*, 17 Cal.4th at p. 607); litigation "concerning [the agreement's] terms, interpretation or enforcement or the rights and duties of any party in relation thereto" (*Khan v. Shim, supra*, 7 Cal.App.5th at p. 59, italics omitted); "any dispute" between the parties (*Miske v. Coxeter* (2012) 204 Cal.App.4th 1249, 1259); or "'any action or proceeding arising out of this agreement'" (*Lerner v. Ward* (1993)

10

13 Cal.App.4th 155, 159).  On the other hand, attorney fee provisions using narrower language, typically referring only to an action to "enforce" the agreement, have been held to permit an award of attorney fees only in connection with contract claims—for example, "an action or proceeding to enforce the terms hereof or declare rights hereunder" (*Exxess Electronixx v. Heger Realty Corp.*, *supra*, 64 Cal.App.4th at p. 702); an action "brought to enforce the terms of this [Release]" (*Gil v. Mansano* (2004) 121 Cal.App.4th 739, 742); or a legal action or arbitration "to enforce the terms of this Agreement" (*Loube v. Loube* (1998) 64 Cal.App.4th 421, 429).

>    b.  *The definition of "prevailing party"*

Code of Civil Procedure section 1032, subdivision (a)(4), expressly defines "prevailing party" for purposes of a statutory award of costs to include "a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant."[7]  However, "'[c]ourts have consistently held the prevailing party for the award of costs under section 1032 is not necessarily the prevailing party for the award of attorney's fees in contract actions under [Civil Code] section 1717.'" (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438.)  Although an essential predicate for an award of attorney fees as costs, the finding a defendant is the prevailing party under Code of Civil Procedure section 1032 is not determinative of whether the defendant is also the prevailing party entitled to recover

---

[7]     Section 1032, subdivision (a)(1) and (2), provides, as used in the section, a complaint includes a cross-complaint and defendant includes a cross-defendant.

reasonable attorney fees under Civil Code section 1717 or the parties' agreement. (*Zintel Holdings,* at p. 438; accord, *David S. Karton, A Law Corp. v. Dougherty* (2014) 231 Cal.App.4th 600, 607; see *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147 ["[t]he definition of 'prevailing party' in [Code of Civil Procedure] section 1032 is particular to that statute and does not necessarily apply to attorney fee statutes or other statutes that use the prevailing party concept"].)

Civil Code section 1717, subdivision (b)(1), provides, "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract." (See *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [prevailing party determination is to be made by comparing the parties' relative degrees of success "upon final resolution of the contract claims"].) Despite this general authorization to award attorney fees when provided by statute or the parties' contract, Civil Code section 1717, subdivision (b)(2), states, "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."[8] "This bar, however, applies *only* to causes of action that are based on the contract and are therefore within the scope of section 1717. If the voluntarily dismissed action also asserts

---

[8]     Civil Code section 1717, subdivision (b)(2), "overrid[es] or nullif[ies] conflicting contractual provisions, such as provisions expressly allowing recovery of attorney fees in the event of voluntary dismissal or defining 'prevailing party' as including parties in whose favor a dismissal has been entered." (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 617.)

causes of action that do not sound in contract, those causes of action are not covered by section 1717, and the [contract's] attorney fee provision, depending upon its wording, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating those causes of action." (*Santisas v. Goodin, supra*, 17 Cal.4th at p. 617.)

With respect to a contractual attorney fee provision in which the term "prevailing party" is not defined and no extrinsic evidence has been offered indicating the parties ascribed to it any particular or specific meaning, as here, the Supreme Court in *Santisas v. Goodin, supra*, 17 Cal.4th 599 held, "Because 'prevailing party' has no settled technical meaning as including or excluding a party in whose favor a dismissal has been entered, we will assume, in the absence of evidence to the contrary, that the parties understood the term in its ordinary or popular sense." (*Id*. at p. 609.) That requires, the *Santisas* Court continued, a pragmatic evaluation of which party (if either) succeeded in its litigation objectives: "If, as here, the contract allows the prevailing party to recover attorney fees but does not define 'prevailing party' or expressly either authorize or bar recovery of attorney fees in the event an action is dismissed, a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." (*Id.* at p. 622; see *Hsu v. Abbara, supra*, 9 Cal.4th at p. 877 ["*in determining litigation success* [to decide whether there is a prevailing party for purposes of a contractual attorney fee provision] courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations'"]; *Sharif v. Mehusa, Inc.* (2015) 241 Cal.App.4th 185, 192 ["'In the absence of legislative

direction in the attorney fees statute, the courts have concluded that a rigid definition of prevailing party should not be used. [Citation.] Rather, prevailing party status should be determined by the trial court based on an evaluation of whether a party prevailed "'on a practical level,'" and the trial court's decision should be affirmed on appeal absent an abuse of discretion"]; *Donner Management Co. v. Schaffer* (2006) 142 Cal.App.4th 1296, 1310 [same].)

>   3. *The Trial Court Acted Well Within Its Discretion in Denying Philpott's Motion for Attorney Fees*

In its opening brief Philpott argued the trial court erred in denying its motion for attorney fees because it was the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4), as a defendant in whose favor a dismissal had been entered; the attorney fee provision in the parties' 2018 management services agreement, which applied to "any arbitration or litigation arising out of or relating to our engagement," covered the tort claims alleged in Davis's cross-complaint (for breach of fiduciary duty and fraud); and Civil Code section 1717, subdivision (b)(2), was not a complete bar to the recovery of attorney fees for successfully defending against Davis's tort claims, as the court had ruled.

In her respondent's brief Davis contended the trial court correctly concluded Philpott was not the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4), not simply Civil Code section 1717, subdivision (b)(2), because Davis had dismissed her cross-complaint with a mutual tolling agreement that did not benefit one side more than the other. Since the trial court found "[Philpott] is not 'free' from [Davis's] claims," Davis argued, the dismissal of Philpott was not a

dismissal "in its favor." Davis additionally argued the "main thrust" of her cross-complaint was "on the contract," emphasizing her tort claims were all contingent, applicable only if the underlying contractual dispute was resolved in Philpott's favor, and any recovery of fees was therefore barred by Civil Code section 1717, subdivision (b)(2). Finally, noting that the fee provision was included in a section of the 2018 management services agreement titled "Arbitration of Disputes," Davis argued, read in context the provision for an award of attorney fees to the prevailing party only applied in arbitration or a judicial proceeding to enforce an arbitration award, not, as here, a lawsuit initiated in court.

We agree with much of Philpott's position on appeal. For purposes of an award of costs under section 1032, Philpott was the prevailing party as to Davis's cross-complaint under three of the four mandatory provisions of subdivision (a)(4): a cross-defendant in whose favor a dismissal was entered, a cross-defendant where neither the cross-complainant nor cross-defendant obtained any relief, and a cross-defendant as against those cross-complainants who did not recover any relief against that cross-defendant. Davis's strained (and unsupported) interpretation of the phrase "in whose favor a dismissal is entered" to include a requirement that the court evaluate the reasons for the dismissal, even were we to find it persuasive, would not eliminate the other two bases for a required finding that Philpott was the prevailing party in light of Davis's dismissal of her cross-complaint.

Similarly, Davis's contention that the placement of the attorney fee provision in the section of the 2018 management services agreement requiring arbitration of disputes limited the

15

award of fees to arbitration proceedings disregards the actual language used by the parties.  As discussed, notwithstanding the intended mandatory nature of arbitration, the agreement anticipated a lawsuit might be filed and expressly required the payment of a substantial deposit to the nonfiling party to cover the costs of defending the prohibited court action.  The following sentence then authorized the recovery of attorney fees by the prevailing party "in any arbitration or litigation."  The availability of attorney fees in a judicial forum could hardly have been made any clearer.  (See *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 919 ["[w]hen the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement"] see generally Civ. Code, §§ 1638 ["[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"], 1644 [words of a contract are to be understood in their ordinary and popular sense unless used by the parties in a technical sense].)

Finally, although Davis acknowledges the attorney fee provision in the 2018 management services agreement is broad enough to include tort or other noncontractual claims, her attempt to categorize her entire cross-complaint as "on the contract" because the "main thrust" was contractual is also flawed.  To be sure, to the extent Davis sought a declaration the parties' 2018 agreement did not apply to the 512 North Gower Street Trust and did not release Feldman from liability arising from his performance as trustee, it was contract-based.  But as our colleagues in the Sixth District explained in *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 408, "Although the phrase 'on a contract' in Civil Code section 1717 has been

liberally construed, it does not stretch to tort claims. "'[T]ort claims do not 'enforce' a contract" and are not considered actions on a contract for purposes of section 1717.' . . . It 'is well settled that ". . . an action for fraud seeking damages sounds in tort, and is not 'on a contract' for purposes of an attorney fee award, even though the underlying transaction in which the fraud occurred involved a contract containing an attorney fee clause."'" At the very least Davis's cause of action for fraud, which sought compensatory and punitive damages, even though "contingent," remained a traditional tort claim and, therefore, outside the bar of Civil Code section 1717, subdivision (b)(2).

All of that said, however, Philpott was entitled to an award of attorney fees as costs pursuant to section 1033.5, subdivision (a)(10)(A), only if it was the "prevailing party" under both section 1032, subdivision (a)(4), and the parties' 2018 management services agreement. Philpott insists the meaning of that term in the statute and the agreement is identical. In support Philpott cites three inapposite cases that address whether a general contract provision authorizing the prevailing party to recover reasonable attorney fees and costs permits the prevailing party to recover cost items not identified as allowable in section 1033.5 or other statutes.[9] Nothing in those cases

_____

[9]     In a supplemental brief filed after we requested the parties expressly address whether the meaning of "prevailing party" in their 2018 agreement was identical to the meaning of that term in section 1032, subdivision (a)(4), Philpott cited *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1065; *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491; and *Ripley v. Pappadopoulo*s (1994) 23 Cal.App.4th 1616, 1621 to 1627, all of which considered whether a contractual provision for the recovery of costs by the

17

suggests the definition of "prevailing party" is properly determined solely by reference to section 1032, subdivision (a)(4). And, as discussed, that is not the law: A pragmatic evaluation of which party, if either, succeeded in its litigation objectives, not rigid definitions, governs determination of the prevailing party for purposes of a contractual fee provision absent a definition in the agreement or extrinsic evidence indicating the parties intended a particular meaning. (*Santisas v. Goodin, supra,* 17 Cal.4th at pp. 609, 622; *Sharif v. Mehusa, Inc., supra,* 241 Cal.App.4th at p. 192.)[10]

The trial court ruled Philpott had not attained its litigation objective because Davis's dismissal was without prejudice and Philpott remained at risk of a renewed cross-complaint seeking indemnity for any award of personal injury damages Harmon and Cammarata might recover against Davis in the Harmon litigation. While it might have been reasonable for the court to reach a different conclusion—as Philpott notes, even though without prejudice, the dismissal of Davis's cross-complaint could

---

prevailing party permitted the recovery of items as costs not otherwise authorized by statute. Even if those authorities had some minimal persuasive value, *Thrifty Payless* and *Arntz* contradict Philpott's position, rather than support it: In both cases the courts of appeal held contracting parties may agree the prevailing party is entitled to recover costs not identified as allowable in section 1033.5. (See *Thrifty Payless*, at p. 1065; *Arntz*, at p. 472.)

[10]    Unlike in this court, in its motion for attorney fees in the trial court, Philpott recognized the Supreme Court's *Santisas* holding that, if "prevailing party" is undefined in the contract, courts should evaluate as a practical matter which party achieved its litigation objectives.

18

properly be viewed as a victory for the cross-defendants—the court's evaluation was neither arbitrary nor irrational:  There was no judgment in Philpott's favor; and, although Davis achieved nothing by the filing and dismissal of the cross-complaint, she gave up nothing either.  (See *Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 622 [in a voluntary pretrial dismissal case with noncontractual claims, in determining the prevailing party for purposes of a contractual fee provision, the trial court is not limited by Civil Code section 1717 and may base its decision on a pragmatic assessment of each party's relative success].)  There was no abuse of discretion.

## DISPOSITION

The July 23, 2021 order denying Philpott's motion for attorney fees is affirmed.  Davis is to recover her costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

19