Filed 1/12/26  National Merchants Assn. v. Commercial Bank of Cal. CA2/8
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NATIONAL MERCHANTS ASSOCIATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COMMERCIAL BANK OF CALIFORNIA, <br><br> Defendant and Respondent. | B341687 <br><br> (Los Angeles County Super. Ct. No. 21STCV44674) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Joseph Lipner, Judge.  Affirmed.

Consumer Equity Legal and Casey C. Daggett for Plaintiff and Appellant.

Hennelly & Grossfeld, Michael G. King and Thomas H. Case for Defendant and Respondent.

————————————————

**SUMMARY**

Plaintiff National Merchants Association appeals from an award of attorney fees to defendant Commercial Bank of California after plaintiff voluntarily dismissed its complaint prior to trial. Plaintiff alleges that all of its claims were based on the contract between the parties, and therefore an award of attorney fees is prohibited by Civil Code section 1717.[1] We find no error in the trial court's conclusion that Commercial Bank of California was the prevailing party and entitled to recover its attorney fees incurred in defending the tort claims alleged against it. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff National Merchants Association, Inc. (NMA) sued Commercial Bank of California (Bank) in connection with a failed business relationship. The operative first amended complaint contains seven causes of action.

**1.     The First Amended Complaint**

In the first amended complaint, NMA alleged that it is in the business of providing electronic payment processing solutions to merchants. NMA is required to contract with a sponsor bank that is registered with the credit card brand (such as Visa or MasterCard) to settle the proceeds of the electronic transactions submitted by NMA's merchants. The sponsor bank is referred to as an "acquirer." In this case, Bank is the acquirer.

According to the complaint, NMA's "niche" included "its proprietary underwriting and account monitoring to effectively manage processing payments for Merchants engaged in the sale of various products online on a trial basis, including

---

[1]     All further undesignated statutory references are to the Civil Code unless otherwise stated.

2

nutraceuticals, which includes products such as skin creams and vitamin supplements." There was "naturally a higher risk of return involved with such Merchant's electronic transactions," as well as a risk of "friendly fraud" referred to as "chargebacks."

In late 2016, NMA began negotiations for Bank "to serve as NMA's Acquirer." On March 1, 2017, the parties entered into a "Merchant Marketing and Processing Agreement" (the 2017 Agreement) based upon Bank's representations, "including that it could adequately onboard and settle NMA's growing portfolio of high-risk online Merchants, specifically consisting largely of Nutra Merchants [Merchants that sold nutraceuticals online]." "At that time" the parties discussed "that though Nutra Merchants were prohibited under [Bank's] restricted merchant types list, [Bank] relying upon NMA's Proprietary Systems to underwrite, approve, onboard, and monitor risk for Nutra Merchants would remove Nutra Merchants from its restricted list and approve Nutra Merchants qualified by NMA."

The 2017 Agreement provides: "In the event of any dispute arising out of or in connection with this Agreement, the prevailing Party shall be entitled to recover its reasonable attorney's fees and court costs in addition to any other recovery."

After a test period, "at the time Parties' business relationship was scheduled to go live, [Bank] inexplicably notified NMA that [Bank] would not accept any applications for payment processing services from Nutra Merchants referred by NMA." This was "a 180 degree about face from the [Bank] Representations."

In late 2017, NMA "was able to satisfy [Bank's] concerns regarding approving Nutra Merchants to overcome its overly stringent policies and complete prohibition on acting as an

3

Acquirer." Although NMA was able to onboard some Merchants and submit transactions, "NMA sill continued to have issues with its Merchants and suffered losses due to [Bank] ignoring NMA's advice and mismanaging the relationship."

NMA alleged that in late 2018, Bank "took a different route to place NMA under further economic duress by attempting to steal NMA's Proprietary Systems, all unbeknownst to NMA." Bank gained access to NMA's confidential information, including its customer list, and "offered NMA's portfolio for sale to various ISOs [independent sales offices]." Other allegations involved Bank's "interfere[nce] with NMA's contractual relationship" with certain merchants and "misappropriating NMA's Proprietary Systems and confidential information."

In May 2019, a Union Bank entity sued NMA in a separate lawsuit in connection with a loan agreement. NMA alleged that the Union Bank lawsuit was filed because NMA was "overleveraged," and this was "primarily due to considerably lower revenue" caused by Bank's "refusing to board merchant accounts from NMA and its failure to fulfill other of the [Bank] Representations." In June 2019, a receiver was installed to take control of NMA.

On June 25, 2019, Bank sent a notice of termination of the parties' 2017 Agreement, and Bank "froze all funds due and owing to NMA" under the 2017 Agreement.

In July 2019, Bank and the receiver for NMA entered into a Temporary Merchant Marketing and Processing Agreement (the 2019 Agreement). The 2019 Agreement increased the rates and fees charged to NMA under the 2017 Agreement by 150 percent.

In April 2020, "[o]nce NMA satisfied its obligations to Union Bank and the Receivership was dissolved, [Bank] forced

4

NMA to execute an Amended and Restated Temporary Merchant Marketing and Processing Agreement" (the 2020 Amended Agreement). At the time, NMA alleged that it "had been placed under such economic duress by [Bank's] actions that it had no choice but to enter" the 2020 Amended Agreement because Bank "had threatened to entirely disable NMA from servicing the Merchants that remained in its portfolio."

NMA alleged that Bank "continues to delay funding revenue due and owing to NMA"; "continues to attempt to interfere with NMA's existing business relationship with its new Acquirer"; and "continues to misappropriate NMA's trade secrets . . . and interfere with NMA's contractual relations and prospective economic advantage by soliciting NMA's customers."

NMA asserted seven causes of action for breach of written agreement (the 2017 Agreement), breach of contract (the 2019 Agreement), breach of the covenant of good faith and fair dealing, unjust enrichment, unfair business practices, promissory fraud, and rescission.

## 2. Procedural Background and Motion for Attorney Fees

NMA filed the original complaint on December 8, 2021, and the first amended complaint on August 19, 2022. The parties' 2017 Agreement provides that any disputes would be heard by a referee, and that the referee "may award attorneys' fees and reimbursement of the referee and reference proceeding fees and costs to the prevailing Party, whereupon all referee and reference proceeding fees and charges will be payable by the non-prevailing Party (as so determined by the referee)." In May 2022, the trial court granted Bank's motion compelling judicial reference and

appointed Hon. Stephen E. Haberfeld (Ret.) of JAMS as the judicial referee.

On February 6, 2023, shortly before trial, NMA filed a request for dismissal of the entire action without prejudice, and the dismissal was entered on February 8, 2023. On February 23, 2023, Bank filed a memorandum of costs totaling $186,834.49, with attorney fees to be determined by motion.

On March 30, 2023, Bank filed its motion for attorney fees and costs "under Code of Civil Procedure sections 638, 1021, 1032 and 1033.5(a)(10), and Civil Code section 1717." Bank sought fees and costs of $941,762.93, consisting of $186,834.49 in costs "and $754,928.44 in fees, only 70 percent of the fees [Bank] actually incurred." Bank stated its motion was "made on the grounds that NMA sued [Bank] for both contract and tort claims, allowing [Bank] to recover its expenses in defending the tort claims under Civil Code section 1717 despite NMA's voluntary dismissal of this case on the eve of trial."

On April 28, 2023, NMA filed its opposition to Bank's motion for attorney fees and costs. NMA argued that Bank's motion was "prohibited by statute with respect to contract claims" by section 1717, subdivision (b)(2), and "otherwise entirely premature" because Bank "cannot be considered a 'prevailing party' prior to resolution of [a pending related case]."

NMA argued that "[a]s [Bank] admitted in its Motion, NMA cannot be liable for fees and costs related to its breach of contract allegations because the case was voluntarily dismissed. . . . Anything that is not strictly contractual is still pending further litigation and it would be premature for the Judicial Referee or the Superior Court to make a determination about who the prevailing party is." NMA also argued that Bank

"routinely characterized NMA's case as nothing more than a breach of contract case, and the fees sought are unreasonable and duplicative."

The pending related case referred to by NMA is a separate lawsuit filed by Heather Altepeter, NMA's principal and CEO, against individuals at the Bank, alleging substantially similar tort claims as alleged in this case (Altepeter case). In the Altepeter case, plaintiff asserted claims for unfair business practices, intentional interference with prospective economic relations, negligent interference with prospective economic relations, intentional interference with contractual relations, and negligence.

At the same time NMA opposed Bank's motion for attorney fees, NMA also filed a motion in superior court to return jurisdiction to the superior court and stay proceedings regarding costs and fees until the Altepeter case was resolved. On October 5, 2023, the superior court (Judge Joseph Lipner) denied NMA's motion, observing that NMA "provides no authority for such an assertion" and "no legal basis for staying the matter of attorney's fees and costs until the related case is resolved." Judge Lipner also noted that the motion for attorney fees was "properly before the judicial referee and not this Court."

On June 29, 2023, Ms. Altepeter filed a motion for leave to file a second amended complaint in the Altepeter case. On September 12, 2023, Judge Lipner denied the motion. Judge Lipner's order noted that the bank defendants argued Ms. Altepeter "engaged in gamesmanship by dismissing the other related case [ ] shortly before trial, refiling a similar lawsuit here,

7

and then seeking to add the plaintiff from the related case.[2]
The court record supports defendants' argument. The plaintiff in
the related case could have litigated that case to conclusion or
plaintiff could have sought to consolidate the two cases. Instead,
the plaintiff dismissed the case without prejudice after an
adverse ruling for what appears to be entirely strategic reasons."

### 3.    The Referee's Ruling

The referee held several hearings in connection with Bank's
motion for attorney fees, including an evidentiary hearing on
February 8, 2024. Ms. Altepeter testified at the evidentiary
hearing, as did two of Bank's lawyers, and various exhibits were
entered into evidence.

NMA's principal argument was that the prevailing party
issue should not be determined until the conclusion of the
Altepeter case. As NMA's counsel stated at the hearing: "I would
just say that the issue of prematurity has not been resolved.
It's why we briefed this case. It's the whole premise of this
evidentiary hearing."

After the February 8 hearing, the parties filed
supplemental post-hearing briefs. NMA again argued in its
closing brief that "[t]here is not a prevailing party, yet." NMA
also argued that "[t]his is not a tort case," and the *Santisas*[3]
exception "to the well-settled rule protecting a plaintiff's right to
dismiss without prejudice, and without liability," applies "to
matters grounded in tort, not business disputes in which breach
of contract is the genesis."

---

[2]    The related case referenced in Judge Lipner's order is this
lawsuit, NMA v. Bank.

[3]    *Santisas v. Goodin* (1998) 17 Cal.4th 599 (*Santisas*).

Bank submitted supplemental briefing and declarations requesting additional attorney fees and costs due to the subsequent legal work in litigating the attorney fee and related motions. Bank's supplemental request was for $913,534.47 in attorney fees and $192,327.32 in costs.

On April 29, 2024, the referee issued his order. The referee found that the resolution of Bank's request for attorney fees and costs was not premature. The referee noted that "the opportunity for NMA – as an entity legally separate from its founder, sole or principal shareholder and CEO, Heather Altepeter – to achieve or realize any legitimate objective vis-à-vis [Bank] has been extinguished by operation of law or via final court order." Further, the referee found that Bank "has achieved its litigation objectives of a dismissal of all claims against it by NMA" without any payment or settlement.

The referee also found "[t]he closest authority bearing on the issues presented by [Bank's] request for attorneys' fees and costs, following NMA's February 2023 voluntary dismissal of the entire action in this matter, appears to be the California Supreme Court's decision in [*Santisas, supra,* 17 Cal.4th 599]." The referee cited the *Santisas* opinion in reaching his conclusion that Bank established it was the prevailing party "for purposes of any compensable award of attorneys' fees and costs incurred in connection with this civil action."

The referee awarded Bank "its reasonably incurred 'prevailing party' attorneys' fees and costs," consisting of $913,534.47 in attorneys' fees and $192,327.32 in compensable costs.

On June 17, 2024, the referee signed an amended judgment for $913,534.47 in attorney fees and $196,424.82 in costs. On August 16, 2024, the superior court ordered the judgment signed by the referee to be entered, and notice of entry was issued on the same date.

NMA filed a timely notice of appeal.

## DISCUSSION

On appeal, NMA primarily argues that all of the claims in its first amended complaint are "on a contract," and therefore Bank is precluded from recovering any of its attorney fees by section 1717.

NMA argues that a determination of the legal basis for an award of attorney fees is a question of law to be reviewed de novo. We agree. "A determination of the legal basis for an award of attorney fees is a question of law we review de novo." (*Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388, 391; see also *Khan v. Shim* (2016) 7 Cal.App.5th 49, 55 (*Khan*) ["Because our determination of whether the trial court's fee award violated section 1717[,subdivision] (b)(2) involves issues of law, our review is de novo."].)

Thus, we apply de novo review to this stage of the analysis.

## I. Bank is the Prevailing Party

As both parties observe, many cases have addressed the interplay among the Code of Civil Procedure, the Civil Code, and case law in addressing attorney fees to be awarded as costs to the prevailing party in litigation, and more specifically, when the plaintiff voluntarily dismisses its claims prior to trial.

Like the referee, we find the analysis in *Santisas,* remains the controlling authority in California. In *Santisas*, residential home buyers sued the sellers for breach of contract, negligence,

10

deceit, negligent misrepresentation, and suppression of fact. (*Santisas, supra*, 17 Cal.4th at p. 603.) Buyers dismissed the case before trial, and the defendant sellers moved to recover their attorney fees as costs. The trial court awarded fees, and the Court of Appeal affirmed. The Supreme Court engaged in a detailed analysis of the relevant Code of Civil Procedure and Civil Code sections, as well as related case law, and concluded that defendants were entitled "to recover as costs the amount they incurred in attorney fees to defend the tort claims asserted against them," but not the "fees incurred in the defense of the breach of contract claim." (*Santisas,* at pp. 622-623.)

NMA appears to dispute the continued validity of *Santisas*. NMA suggests we should "put[] the basis for the *Santisas* case aside" in favor of recent cases and describes *Santisas* as "[i]n contrast to the recent decisions." We find no reason to "put aside" the basis for *Santisas*. Nor do we agree that recent cases are in contrast to the *Santisas* decision. Rather, numerous cases have applied the analysis in *Santisas* in determining the impact of section 1717 on the recovery of attorney fees where the plaintiff dismisses an action before trial.

Therefore, we affirm the continued validity of *Santisas*, and its reasoning guides our analysis. "[W]e begin with the question whether the [] defendants are generally entitled to recover their litigation costs in this action." (*Santisas, supra*, 17 Cal.4th at pp. 605-606.)

Whether a party to litigation is entitled to recover costs is governed by Code of Civil Procedure section 1032, subdivision (b), which provides that "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code of Civ. Proc.,

§ 1032, subd. (b).)  Section 1032, subdivision (a)(4) defines "prevailing party" as including, among others, "a defendant in whose favor a dismissal is entered."  (Code of Civ. Proc., § 1032, subd. (a)(4).)

Bank is a defendant in whose favor a dismissal was entered.  As a result, Bank is the prevailing party within the meaning of Code of Civil Procedure section 1032 and is entitled as a matter of right to recover its costs.

Code of Civil Procedure section 1033.5 provides that attorney fees are "allowable as costs under Section 1032" when they are "authorized by" either "Contract," "Statute," or "Law."  (Code Civ. Proc., § 1033.5, subds. (a)(10)(A)-(C).)  Accordingly, Bank is entitled to recover its attorney fees as costs, "if, but only if, the [] defendants have an independent legal basis for recovery of attorney fees."  (*Santisas, supra*, 17 Cal.4th at p. 606.)

We look to the contract between the parties to determine whether Bank has an independent legal basis for recovery of its attorney fees.  There is no dispute that the parties entered into the 2017 Agreement.  The 2017 Agreement provides:  "In the event of any dispute arising out of or in connection with this Agreement, the prevailing Party shall be entitled to recover its reasonable attorney's fees and court costs in addition to any other recovery."  Therefore, Bank has an independent legal basis for recovery of its attorney fees as costs as authorized by contract.

Next we consider the scope of the attorney fee clause in the 2017 Agreement to determine the types of claims for which fees may be recovered.  The attorney fee clause at issue here is substantially similar to other attorney fee clauses that have been found broad enough to encompass both tort and contract claims.

12

In *Santisas*, the Supreme Court interpreted the following clause to cover tort claims: legal action " 'arising out of the execution of this agreement.' " (*Santisas, supra*, 17 Cal.4th at p. 607.) "[W]here the language of the agreement broadly applies to ' "any dispute" ' under it, the attorney fee clause encompasses any conflict concerning the effect of the agreement, including a tort claim." (*Miske v. Coxeter* (2012) 204 Cal.App.4th 1249, 1259.)

Here, the 2017 Agreement provides for recovery of attorney fees in the event of "any dispute" "arising out of" or in connection with the agreement. We find this attorney fee provision is broad enough to encompass both tort and contract claims.[4]

Next, we look for the definition of prevailing party. The 2017 Agreement does not define "prevailing party." In the absence of a controlling definition, "[t]he words of a contract are to be understood in their ordinary and popular sense . . . ." (§ 1644.)

Again, the Supreme Court's analysis in *Santisas* is helpful: "Giving the term 'prevailing party' its ordinary or popular sense, the seller defendants are the prevailing parties in this litigation. Plaintiffs' objective in bringing this litigation was to obtain the relief requested in the complaint. The objective of the seller defendants in this litigation was to prevent plaintiffs from obtaining that relief. Because the litigation terminated in voluntary dismissal with prejudice, plaintiffs did not obtain by judgment any of the relief they requested, nor does it appear that plaintiffs obtained this relief by another means, such as a settlement. Therefore, plaintiffs failed in their litigation

---

[4]    NMA does not appear to dispute this portion of the analysis, as NMA does not argue that the attorney fee clause is too limited to include tort claims.

13

objective and the seller defendants succeeded in theirs. Giving the term 'prevailing party' its ordinary or popular meaning, the seller defendants are the 'prevailing part[ies]' under their agreement with plaintiffs." (*Santisas, supra*, 17 Cal.4th at p. 609.)

Applying the Supreme Court's analysis in *Santisas*, we find Bank is the prevailing party. This is consistent with the referee's ruling granting Bank's motion for attorney fees: "By any fair and practical measure, . . . [Bank] has established that it is the 'prevailing party' in this civil action for purposes of any compensable award of attorneys' fees and costs incurred in connection with this civil action."

However, as noted in *Santisas*, that is not the end of the inquiry. "Having concluded that under the cost statutes and under the terms of their agreement with plaintiffs the seller defendants are entitled to recover their attorney fees as costs, we come to the main issue presented here, which is whether such recovery is precluded by either . . . section 1717 . . . or the decision of this court in [*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218 (*Olen*)]."[5] (*Santisas, supra*, 17 Cal.4th at p. 609.)

---

[5] The Supreme Court concluded that *Olen* "has been effectively superseded by the 1981 amendment of section 1717 codifying its holding." (*Santisas, supra*, 17 Cal.4th at p. 622.) The 1981 amendment to section 1717 added subsection (b)(2), the operative subsection at issue here. Thus, *Olen* does not add to our analysis in this case.

14

**II.  Civil Code Section 1717 Does Not Preclude Bank From Recovering Attorney Fees for Tort Claims Alleged by NMA**

Section 1717, subdivision (b)(2) states:  "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."  (§ 1717, subd. (b)(2).)  This section "generally bars the award of attorney fees after a pretrial voluntary dismissal for defense of contract causes of action." (*Khan, supra,* 7 Cal.App.5th at p. 52.)

Again, the *Santisas* court provides the appropriate framework for our analysis:  "When a plaintiff files a complaint containing causes of action within the scope of section 1717 (that is, causes of action sounding in contract and based on a contract containing an attorney fee provision), and the plaintiff thereafter voluntarily dismisses the action, section 1717 bars the defendant from recovering attorney fees incurred in defending those causes of action, *even though the contract on its own terms authorizes recovery of those fees*.  [¶]  This bar, however, applies *only* to causes of action that are based on the contract and are therefore within the scope of section 1717.  If the voluntarily dismissed action also asserts causes of action that do not sound in contract, those causes of action are not covered by section 1717, and the attorney fee provision, depending upon its wording, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating those causes of action."  (*Santisas, supra*, 17 Cal.4th at p. 617.)

Courts have continued to apply the analysis in *Santisas* in determining the impact of section 1717 on the recovery of attorney fees where the plaintiff dismisses an action before trial.

In *Khan*, plaintiff Khan filed a complaint alleging breach of contract and tort claims against defendant Shim in connection with the sale of a dental practice.  Shim filed a cross-complaint also alleging breach of contract and various torts.  Khan dismissed the complaint before trial, and the trial court found for cross-defendant Khan on all claims alleged in the cross-complaint.  (*Khan, supra*, 7 Cal.App.5th at p. 53.)

After trial, Shim filed a motion for attorney fees.  The trial court found that Shim was the prevailing party on the complaint pursuant to Code of Civil Procedure section 1032, subdivision (a)(4) because Shim was a defendant where neither plaintiff nor defendant obtains any relief.  The trial court granted Shim's request for attorney fees.  (*Khan, supra*, 7 Cal.App.5th at p. 54.)

The Court of Appeal, relying heavily on *Santisas*, reversed the trial court's order "insofar as it declared Shim to be the prevailing party on Khan's complaint as a whole, including Khan's contract causes of action." (*Khan, supra*, 7 Cal.App.5th at p. 64.)  "Insofar as Shim seeks to recover attorney fees for his defense against Khan's contract claims, this recovery is prohibited by section 1717[, subdivision] (b)(2); insofar as Shim seeks to recover attorney fees for his defense against Khan's tort claims, that depends on the wording of the parties' fee provision and whether it is broad enough to encompass torts." (*Khan*, at p. 57.)  The Court of Appeal remanded the case to the trial court for further proceedings.  "This will require the trial court to address the issue of allocating the fees between the causes of action." (*Id.* at p. 63.)

In *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, (2008) 162 Cal.App.4th 858 (*Blickman Turkus*), plaintiff Blickman Turkus, a real estate broker, filed a complaint against

16

MF Downtown Sunnyvale and Mozart Development Co. (collectively referred to as Mozart) for breach of a commission agreement. Mozart filed a cross-complaint against Blickman Turkus for failure to disclose certain facts about the lessee in a failed real estate transaction. Blickman Turkus successfully demurred to the cross-complaint, which was dismissed without leave to amend.

Defendant Mozart prevailed on the original complaint and then filed a motion for attorney fees pursuant to section 1717 based on its status as the prevailing party on the complaint and an attorney fee clause in a commission agreement between Mozart and third-party broker Commercial Property Services (CPS). As is relevant for our analysis, Blickman Turkus opposed the motion on the grounds that Mozart was not the prevailing party because Mozart had not prevailed on its cross-complaint, which was an "action on the contract," and therefore Mozart was not the prevailing party under section 1717. The trial court denied the motion for attorney fees. (*Blickman Turkus, supra*, 162 Cal.App.4th at pp. 893-894.)

The Court of Appeal affirmed the trial court's order denying attorney fees, finding the cross-complaint was "on the contract." The Court of Appeal noted the cross-complaint referenced the commission agreement no fewer than fourteen times and relied heavily on the language of the agreement. (*Blickman Turkus, supra*, 162 Cal.App.4th at p. 895.) As a result, "each party prevailed on the other's 'action on a contract' and neither prevailed on the matter as a whole." (*Id*. at p. 894.)

In *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943 (*Del Cerro Mobile Estates*), plaintiff mobile home park brought a breach of contract and nuisance action against tenant

17

Margery Proffer.  Plaintiff dismissed the complaint without prejudice, and tenant filed a motion for attorney fees pursuant to Civil Code section 798.85, the Mobilehome Residency Law.  The trial court granted the motion and awarded tenant approximately 60 percent of her requested fees.

The Court of Appeal affirmed the attorney fee award, finding the tenant was not entitled to attorney fees for defending against the breach of contract claim, but was entitled to attorney fees for defending against the nuisance action, brought under the Mobilehome Residency Act.  "Although section 1717 precluded [defendant] from recovering attorney fees incurred in defending against [plaintiff's] breach of contract cause of action, the superior court properly awarded [defendant] attorney fees incurred in defending against [plaintiff's] statutory nuisance action.  Nothing in section 1717 or attendant case law 'bars recovery of attorney fees incurred in defending tort or other noncontract claims.' [Citation.]  Thus, where 'an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims.' " (*Del Cerro Mobile Estates, supra*, 87 Cal.App.4th at p. 948.)

None of these cases abrogates the standard articulated in *Santisas*.  Rather, the Court of Appeal in each of these cases relied on *Santisas* in reaching its conclusion that section 1717 bars only those attorney fees incurred in defending against contract claims when those claims are dismissed prior to trial.  In *Khan*, the case was remanded to the trial court to distinguish between dismissed contract and tort claims.  In *Blickman Turkus*, the denial of attorney fees was affirmed where all claims (including those dismissed prior to trial) were found to be on "on

18

a contract." In *Del Cerro Mobile Estates*, a partial award of attorney fees was affirmed for defending against a dismissed tort claim but not for defending against a dismissed contract claim.

Thus, we must consider whether the referee properly distinguished between attorney fees incurred defending contract claims and fees incurred defending tort claims.

## III. The Referee Reasonably Allocated Seventy Percent of Bank's Attorney Fees to Tort Claims

At this stage of our analysis, the standard of review shifts. "[I]t is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) Having concluded that the referee applied the correct legal basis for Bank's award of attorney fees, we review the "entitlement and amount of an attorney fee award . . . for abuse of discretion[.]" (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 149.)

As noted above, Bank argued in its attorney fee motion that "[t]he bulk of NMA's allegations—over 70 percent—were tort allegations that supported its prayers for disgorgement and punitive damages[.]" Regardless of how the claims were captioned, Bank argued that NMA alleged claims for "[f]raud," "[c]orporate 'sabotage,' interference with contractual relations/prospective advantage, trade libel," "[s]eizing NMA's funds [Conversion]," "[s]tealing NMA's merchant clients [Interfering with Contract/Prospective Business Advantage, trade libel]," "[m]isappropriation of trade secrets," "[c]onspiracy with NMA's court-appointed receiver [Interference with Prospective Business Davnatge/Unfair Competition]," and "[g]ender

19

discrimination [Unruh Act]." In addition, Bank argued that "*all* of the $200 million in damages requested were tort damages. NMA's experts calculated six damages categories—all consistent with tort damages, and none labeled or described as contract damages." In support of the motion, Bank submitted the report prepared by NMA's damages expert, which identified damages for "[Bank] Interference with NMA Account Submissions" of over $10 million, "[Bank's] distribution of misinformation" of approximately $320,000, and "[Bank's] Intent to Poach" of over $144 million. Indeed, NMA's counsel conceded at oral argument that NMA's damages calculation was based on various tort theories.

Although Bank alleged that no apportionment of fees was required where the contract and tort claims overlap, Bank "nevertheless is seeking only 70 percent of its total fees based on a conservative estimate of the fees incurred defending only NMA's tort claims."

On the other hand, NMA argued in its opposition to the fee motion that "only a fraction of the attorney fees sought by [Bank] are related to non-contract claims and therefore no related fees are recoverable." Alternatively, NMA argued that "recoverable fees should be limited to a tiny fraction of the fees requested in [Bank's] Motion." NMA never presented an alternative "tiny fraction."

Faced with these competing considerations, the referee concluded that Bank "as the prevailing party in this civil action—shall recover its reasonably incurred 'prevailing party' attorneys' fees" in "[t]he amount and sum of $913,534.47, as and for reasonable attorneys' fees incurred by [Bank] in connection with this civil action."

We find no abuse of discretion in this conclusion. First, as argued by Bank, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130.) Where, as here, all of NMA's damages were premised on tort theories, arguably all of Bank's defense costs were incurred in connection with common issues, such that Bank was not required to apportion its attorney fees between time expended on contract defense and tort defense. However, Bank made the reasonable decision to estimate its tort defense costs at 70 percent of the total attorney fees incurred. The referee, after an evidentiary hearing at which Bank's attorneys testified about the work performed in this case, concluded that was a reasonable estimation. We see no abuse of discretion in the referee's conclusion.

Second, while courts have cautioned against "the simple expedient of adding up the tort claims in a complaint to see if they outnumber the contract claims" when allocating attorney fees pursuant to Civil Code section 1717, subdivision (b)(2), Bank's analysis was more than such a "simple expedient." (*Khan, supra,* 7 Cal.App.5th at p. 58.) In its attorney fee motion, Bank argued that NMA's operative complaint contained four tort and three contract claims. But Bank did not rest on the simple math of tort versus contract claims. Rather, Bank engaged in a detailed analysis of the claims, noting that the label assigned to a cause of action is not determinative of the nature of the underlying claim. "Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded." (*Arthur L. Sachs, Inc. v. City of*

21

*Oceanside* (1984) 151 Cal.App.3d 315, 322.)  Based on this analysis, Bank argued that "over 70 percent" of NMA's claims were "tort allegations."

Finally, Bank argued, and NMA conceded, that all of NMA's claimed damages rested on theories of tort liability. Under these circumstances, we find no abuse of discretion in the referee's conclusion that 70 percent of Bank's attorney fees were recoverable for Bank's defense of the tort claims alleged by NMA. Although the referee did not make express findings regarding this allocation, the referee was not required to do so.  "Although the court did not *expressly* state its findings regarding the issues involved in the [attorney fee] motion, neither the statute nor other authority required it do so.  Thus, based upon the doctrine of implied findings and the fundamental rules of appellate review upon which it is based, we are required to infer any factual determinations necessary to support the order." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1273 .)

## DISPOSITION

The trial court's judgment is affirmed.  Bank shall recover its costs on appeal.


UZCATEGUI, J.*

I Concur:


WILEY, Acting P. J.

---

* Judge of the Los Angeles County Superior Court, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22

**WILEY, J., Concurring.**

Typically in life, a rough estimate is good enough. Why? Because adding precision can be costly, and the cost can swamp the benefit. In that way the perfect can become the enemy of the good.

Here the trial court watched the parties engage in a reasonableness contest. What was the reasonable split between tort and contract? The bank said 70 percent. The other side said zero percent. The trial court was fully justified in deciding the bank won the reasonableness contest.

Sending this case back for interminable litigation over attorney fees would be a nightmarish result. It would be costly. What principle of substantial justice would it serve? Why is precision vital here?

I fully join in the majority opinion affirming the trial court decisionmaking.


WILEY, Acting P. J.

VIRAMONTES J., Concurring and Dissenting.

I concur with the majority's determination that the attorney fees clause in the 2017 Merchant Marketing and Processing Agreement encompasses both tort and contract claims. I also agree that defendant Commercial Bank of California (Bank) is the prevailing party in the litigation. Finally, I agree with the majority that under *Santisas v. Goodin* (1998) 17 Cal.4th 599 (*Santisas*) and Civil Code section 1717, subdivision (b)(2),[1] Bank may recover its attorney fees for defending tort claims, but it cannot collect its fees based on defending contract claims.

I depart from the majority opinion because *Santisas* requires that a trial court define which claims are based on contract versus tort, to inform a trial court's attorney fees order. (*Santisas*, *supra*, 17 Cal.4th at p. 615.) As I explain below, the Supreme Court modeled this procedure in *Santisas*. Because the referee failed to define which claims were based in tort and which were based in contract before allocating attorney fees, I would reverse the referee's ruling and remand for a new hearing.

In *Santisas*, the plaintiff alleged causes of action for breach of contract, negligence, deceit, negligent representation, and suppression of fact. (*Santisas*, *supra*, 17 Cal.4th at p. 603.) There, the plaintiffs voluntarily dismissed their claims with prejudice after some discovery took place. (*Id*. at p. 615.) The Court of Appeal ruled that plaintiffs pursued only tort claims, concluding that the plaintiffs "mislabeled" their contract claim, in affirming the trial court order granting defendants their

---

[1]     All further statutory citations are to the Civil Code.

attorney fees.  (*Ibid*.)  The Supreme Court reversed and remanded explaining that the plaintiff's breach of contract claim was in fact a contract claim and had not been mislabeled.  (*Ibid*.)

To make its ruling, the Supreme Court reviewed the breach of contract claim by examining the complaint's allegations and ruled that this claim was an action on the contract under section 1717.  (*Santisas*, *supra*, 17 Cal.4th at p. 603.)  The Supreme Court noted "the complaint alleged that 'defendants breached the contract by failing to provide for the premises to be without structural defect and roof leakage; failing to replace chimney caps; failing to install downspout; failing to repair broken front door lock; failing to complete work recommended by Dudley Termite report, including the second inspection; and all the work necessary for energy conservation ordinance clearance including the repair of the windows.' " (*Id*. at p. 615.)  The Supreme Court engaged in this extensive analysis to evaluate which theories were based on tort and which were based on contract before remanding the case.  (*Id*. at p. 617.)  The referee failed to conduct this analysis in this case.

In its motion for attorney fees, Bank acknowledged the limitation imposed by section 1717 and restricted its request to 70 percent of its fees.  However, the declarations supporting Bank's motion do not analyze the nature of National Merchants Association's claims.  Rather, Bank appears to have done an estimated, rough calculation unmoored from any evaluation of which claims are tort versus contract claims.  Instead, Bank looked at the totality of the allegations and argued, "[t]he bulk of NMA's allegations—over 70 percent—were tort allegations." The referee appears to have accepted Bank's allocation of attorney fees based on weighing the volume of allegations in the

complaint, as the referee granted Bank its requested fees. However, the referee's ruling does not contain any analysis of the nature of the claims.

Our colleagues in the Sixth District properly rejected a similar approach to the one the majority adopts here. (*Khan v. Shim* (2016) 7 Cal.App.5th 49, 58.) There, the moving party argued that the Court of Appeal could affirm the trial court's award of attorney fees despite the failure to allocate among claims "because a majority of the causes of action in the complaint were tort-based." (*Ibid.*) The Sixth District explained that "the Legislature's statutory mandate cannot be trumped by the simple expedient of adding up the tort claims in a complaint to see if they outnumber the contract claims." (*Ibid.*) However, this appears to be essentially what the referee did here, by approving Bank's request for 70 percent of its attorney fees based on Bank's representation that 70 percent of the allegations in National Merchants Association's complaint reflected tort claims. This was error as the referee's task was not to weigh the volume of allegations or to make some other mathematical assessment. Rather, the referee was obligated to review the suit's causes of action to distinguish contract from tort claims as the Supreme Court did in *Santisas* before the referee could allocate fees among the causes of action. (*Santisas, supra,* 17 Cal.4th at p. 615.)

Further, the 70 percent figure finds no support in the record, even when engaging in the most superficial review of National Merchants Association's claims. Of the seven causes of action asserted in the first amended complaint, the first two are pled as breach of written agreement and breach of contract. The third cause of action seeks damages for breach of the covenant of good faith and fair dealing. "[W]ith the exception of

3

bad faith insurance cases, a breach of the covenant of good faith and fair dealing permits a recovery solely in contract." (*Fairchild v. Park* (2001), 90 Cal.App.4th 919, 927.) The seventh cause of action seeks recission of the 2019 Agreement and the 2020 Amended Agreement. Claims for recission of a contract have generally been found to be "on a contract" for purposes of section 1717. (See *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 841.) Thus, from a cursory review of the first amended complaint without engaging in the thorough review that *Santisas* contemplates, it appears that four out of seven claims (or approximately 57 percent) are labeled as "on a contract," leaving only three out of seven claims (or approximately 43 percent) labeled as tort claims. While not dispositive, the volume of claims that appear to be possibly contract claims is yet another reason to remand for further proceedings.

For these reasons, I respectfully dissent from the majority's decision affirming the attorney fees award.


VIRAMONTES, J.

4