Filed 4/17/26  Boosalis v. Road 49 CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)


| | |
|---|---|
| GUS BOOSALIS,<br>    Cross-complainant and Appellant,<br><br>v.<br><br>ROAD 49, INC. et al.,<br>    Cross-defendants and Respondents. | C098825<br><br>(Super. Ct. No. CV-2018-0243) |


Gus Boosalis appeals the denial of his cross-claim for judicial foreclosure on certain real property in Yolo County and the trial court's subsequent award of attorneys' fees to one of the cross-defendants, Justin Byrd.  The trial court denied judicial foreclosure following a bifurcated bench trial during which Byrd was voluntarily dismissed.  Based on the court's factual findings, which are undisputed in this appeal on the judgment roll, there is no basis to disturb its conclusion that foreclosure was not warranted.  We agree with Boosalis, however, that the award of attorneys' fees to Byrd was precluded by his voluntary dismissal.

BACKGROUND

This appeal involves the resolution of a single cause of action alleged in a cross-complaint that Boosalis filed within the context of consolidated actions relating to a cannabis-growing business operating on property in Guinda, California.

1

In April 2022, Boosalis filed a cross-complaint asserting five causes of action against five cross-defendants: Byrd and his spouse (Fallon Byrd, who seems not to have appeared in the action), both of whom were tenants renting and living on the property; Randen Patterson and Glenn Sharer, the former owners of the property; and Road 49 Inc., a California corporation that purchased the property in 2020. The second cause of action, against all five cross-defendants, sought a decree of judicial foreclosure on the subject property based on the claimed default of certain obligations allegedly secured by a 2018 deed of trust granted to Boosalis. This foreclosure claim was bifurcated and heard at a five-day bench trial in March 2023. After the submission of closing briefs, the trial court issued a tentative decision denying judicial foreclosure.

No reporter's transcript was filed as part of this appeal, but the trial court's tentative decision includes a narrative of the facts adduced at trial, from which we draw the following factual background, supplemented by documents included in the record on appeal.

The Byrds originally rented the property from the owners, Patterson and Sharer, under a lease agreement that included a right to purchase. During that lease, and with the necessary permits, Justin Byrd began a small cannabis-growing operation on the property. At some point, Boosalis (the uncle of one of Byrd's friends) and a few others agreed to invest in the cannabis operation. The trial court found that "[a]ll the money from the investors went into a bank account held by GACD Lenders of Tiburon, LLC (GACD), an entity created by Boosalis and wholly owned and run by him." "No investor, Boosalis included, ever sent money directly to Justin Byrd or to any business entity related to the cannabis operation." Instead, "[t]he investors put their money into GACD, which in turn invested in the cannabis operation." There was no return-on-investment plan. Boosalis also created and ran a management company, First Centaur

2

Management Company, LLC, "which received money from GACD and disbursed it for payroll, property improvements, and other expenses" of the cannabis operation.

At the end of 2016, as part of what the trial court called a "scheme" to secure for himself an interest in the property, not just the business, Boosalis convinced the Byrds, Patterson, and Sharer to execute an addendum to the lease agreement to assign the Byrds' rights to Boosalis. In addition to an assignment of rights, the addendum included the following provision regarding "Improvements to the Property": "The Tenants [(the Byrds)] shall have the right to obtain financing to be secured by a deed of trust to be recorded on the property for the purposes of constructing improvements necessary to initiate and maintain the marijuana cultivation business. The amount to be borrowed and secured by a deed of trust on the property to be no more than $350,000. The amount of the lien shall not exceed the costs associated with the improvements of the land. This money will be borrowed by Tenants from Gus Boosalis, a private lender. The Landlord [(Patterson and Sharer)] will provide a Deed of Trust with Gus Boosalis as the beneficiary which will be recorded on the Property and used to secure the repayment of the Tenants' indebtedness." (Some capitalization omitted.)

The trial court found that "the Byrds never borrowed money from Boosalis for any purpose, let alone for property improvements. Despite the lack of a loan from Boosalis to the Byrds, Boosalis told Patterson [and] Sharer that he had a promissory note from the Byrds and was entitled now to the deed of trust." Boosalis never produced the promissory note and admitted at trial that there had never been one. Based on Boosalis's assurances and threats of litigation, however, Patterson and Sharer signed the requested deed of trust, which was drafted by Boosalis's attorney and recorded in 2018. The deed of trust stated that the Byrds were "indebted" to Boosalis "for an obligation of $350,0000 invested by [Boosalis] for improvements to the Property" and that the deed was granted in consideration for and to secure the sums invested in improvements to the property.

3

The deed further reflected that if Patterson and Sharer should sell the property without Boosalis's written consent, he could declare any of the secured indebtedness or obligations immediately due and payable.

In 2020, Patterson and Sharer sold the property to cross-defendant Road 49 Inc., after the Byrds assigned their right to purchase to Road 49. Patterson and Sharer did not first obtain Boosalis's written consent, and they did not pay him $350,000 out of the sale's escrow. Boosalis brought his judicial foreclosure action in response.

In reaching the above factual findings, the trial court resolved all disputed facts against Boosalis because it found he lacked credibility based on his demeanor and evasiveness while testifying and on his actions leading up to the lawsuit. The court concluded that Boosalis was not entitled to judicial foreclosure for three reasons. First, the court reasoned that Boosalis had obtained the deed of trust under false pretenses by lying about the existence of the promissory note and threatening litigation, amounting to fraud in the inducement. Second, the court found that the Byrds "have no obligation to Boosalis" because he did not invest in the cannabis operation but instead invested in GACD, which also had not provided money to the Byrds but to the First Centaur management company. The court explained that the Byrds were therefore "not obligated to Boosalis or GACD for property improvements, or any other cannabis operation expenses, whether by investment or by loan." This made Boosalis's deed of trust worthless, "since a 'security interest cannot exist without an underlying obligation.' " (Quoting *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235.) The court also characterized the deed of trust as "a wild deed which cannot be enforced." Finally, the court found the deed of trust invalid based on Boosalis's unclean hands, which it ascribed to his "[b]ullying" of and lying to Patterson and Sharer, the drafting and recording of a deed containing "false recitals," and other conduct preceding the litigation.

4

The court thus denied judicial foreclosure. The tentative decision further awarded costs and attorneys' fees to all five cross-defendants.

On April 27, 2023, the trial court issued a judgment and order adopting the tentative decision and overruling Boosalis's written objections to the tentative ruling. The court found that Boosalis's objections misrepresented the contents of the lease addendum provision regarding improvements to the property. Boosalis had asserted that the agreement provided that he was to receive the deed of trust as security for his investment in the property. The court found that the agreement "provide[d] nothing of the kind" because "the deed noted in the lease agreement would come into being only if [Boosalis] acted as a private lender and the Byrds borrowed from him." The court found that "[n]one of that happened": Justin Byrd testified that the Byrds never borrowed money from Boosalis, and Boosalis presented no evidence that he loaned them anything. The court viewed this misrepresentation as "another example of the many causes the [c]ourt had throughout trial to find Boosalis completely lacking credibility."

Patterson and Sharer filed a notice of entry of judgment, and Boosalis thereafter filed a timely notice of appeal. In their appellate briefs, the parties represent that Boosalis subsequently dismissed all of his remaining cross-claims against all of the cross-defendants, and the register of actions reflects a March 2024 request for dismissal of these remaining causes of action. We therefore amend the judgment to reflect a dismissal of each of those causes of action with prejudice, to take effect nunc pro tunc as of April 27, 2023, and proceed with this appeal. (See *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308-309.) The appeal was stayed for eight months in 2024 due to Patterson and Sharer's separate bankruptcy proceeding. (11 U.S.C. § 362(a).)

5

DISCUSSION

I.

Boosalis first contests the denial of relief on his cause of action for judicial foreclosure.

"An action for foreclosure under a deed of trust is a proceeding in equity in which the court has broad powers to grant appropriate relief as needed to protect the parties' rights." (*Majestic Asset Management LLC v. The Colony at California Oaks Homeowners Assn.* (2024) 107 Cal.App.5th 413, 423 (*Majestic*); see Code Civ. Proc., § 725a.) "We review rulings based on equitable considerations for abuse of discretion," which involves de novo review of the trial court's conclusions of law. (*Majestic*, at pp. 423-424.) The trial court's " 'application of the law to the facts is reversible only if arbitrary and capricious.' " (*Id.* at p. 424.)

Boosalis states that he is not challenging whether substantial evidence supports any of the trial court's factual findings, a position confirmed by the absence of any reporter's transcript or agreed or settled statement. (See Cal. Rules of Court, rule 8.120(b) [to raise issue that requires consideration of oral proceedings in trial court, record on appeal must include reporter's transcript, agreed statement, or settled statement].) Our task in this appeal "on the judgment roll" (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082) therefore "is limited to determining whether any error 'appears on the face of the record' " (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324-325). Because Boosalis does not challenge the trial court's factual findings, "we accept the facts set forth [by the trial court] and determine whether those factual findings support the judgment as a matter of law." (*Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617; see *City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1322.)

Boosalis contends that the trial court legally erred in each of its three stated reasons for denying his judicial foreclosure claim. We need not decide the correctness of

6

each of these reasons because we find the second one dispositive. Boosalis was not entitled to a foreclosure decree based on his deed of trust because, given the trial court's uncontested factual findings, the deed of trust was not enforceable due to the absence of an underlying obligation.

"A deed of trust is ' "practically and substantially only [a] mortgage[] with a power of sale . . . ." ' " (*Majestic*, *supra*, 107 Cal.App.5th at p. 424.) Like a mortgage, a deed of trust "creates a lien on property to secure the performance of some act." (*Ibid.*; Civ. Code, § 2920, subd. (a).) The parties agree that, to be valid, a deed of trust requires an underlying obligation. (*Alliance Mortgage Co. v. Rothwell*, *supra*, 10 Cal.4th at p. 1235 ["A security interest cannot exist without an underlying obligation"].) Boosalis is correct that the underlying obligation need not be payment of a promissory note. (*Dool v. First Nat'l Bank* (1930) 107 Cal.App. 585, 588 ["A trust deed may be given as security for an indebtedness whether represented by a note or not"].) But contrary to his arguments on appeal, the trial court did not hold otherwise. While the court noted the absence of a promissory note, the reason it denied foreclosure was for lack of an underlying obligation of any kind.

Boosalis maintains that the 2016 addendum to the lease agreement created such an obligation requiring the repayment of up to $350,000 of the funds Boosalis allegedly invested in improvements to the subject property. The language of the lease addendum does not support his reading. The addendum gave the Byrds "*the right* to obtain financing" of up to $350,000 for property improvements, with the money to be "borrowed . . . from Gus Boosalis, a private lender." (Italics added.) But after hearing the evidence presented at trial, the trial court found that the Byrds never exercised that right. The court found that Boosalis never acted as a private lender, and the Byrds never borrowed from him. Given the nature of Boosalis's appeal, we must accept the trial court's factual findings that whatever investment Boosalis made in improvements to the

7

property was not a personal loan to the Byrds for such improvements. And as the trial court concluded, that "means that the Byrds [we]re not obligated to Boosalis or GACD for property improvements, or any other cannabis operation expenses, whether by investment or by loan."

Patterson and Sharer's decision to sign the 2018 deed of trust, which recited that the Byrds *were* indebted to Boosalis, also does not change the fact, as found by the trial court, that the Byrds were not so indebted. (*Western Loan & Building Co. v. Scheib* (1933) 218 Cal. 386, 393 [mortgage "is merely security for a debt, and if there is no debt there is no mortgage"]; *Alliance Mortgage Co. v. Rothwell*, *supra*, 10 Cal.4th at p. 1235 [no security interest without underlying obligation].) The mere recordation of Boosalis's deed of trust could not create a debt where none then existed. (*Western Loan*, at p. 393 [holding that mortgage as lien came into existence on date that debt came into existence, not on earlier date of recording].) This conclusion also disposes of Boosalis's passing contention that Patterson and Sharer are estopped from denying the contents or validity of the deed of trust that they signed.

Boosalis appears to be correct that the trial court mischaracterized his deed of trust as a "wild deed," given that it was recorded within the chain of title. (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1107 [quitclaim deed "was a wild deed because it was recorded outside the chain of title"]; *Far West Savings & Loan Assn. v. McLaughlin* (1988) 201 Cal.App.3d 67, 73.) The trial court used this term once, in a single sentence when concluding its analysis that there was no obligation underlying the deed of trust. That conclusion was correct, and our role is only to "review the correctness of the judgment, and not the court's reasons." (*Aguayo*, at p. 1115 [appellate court "must affirm the judgment if it can be supported on any legal theory, even if the trial court misapplied or misunderstood the law"].)

8

Because the deed of trust was unenforceable due to the lack of an underlying obligation or debt, the trial court properly denied Boosalis's judicial foreclosure claim. Given this conclusion, we need not address whether the claim was also properly denied under the doctrines of fraud in the inducement or unclean hands.

## II.

Boosalis also separately contests the trial court's award of attorneys' fees to Justin Byrd. We agree that this fee award must be reversed.

## A.

The trial court's tentative decision on Boosalis's foreclosure claim awarded costs and attorneys' fees to all five cross-defendants, including the Byrds. As to the Byrds, the trial court reasoned that "Boosalis's dismissal of the Byrds after his case in chief (in the face of a motion for nonsuit which the court was about to grant) does not mean the Byrds did not incur fees on the foreclosure cause of action. The Byrds earlier had counsel. To the extent counsel worked on the judicial foreclosure issue, whether while attorney of record or in later advising the Byrds, the Byrds are entitled to recover those fees."

After the tentative decision was adopted as the trial court's final ruling, Justin Byrd filed a motion for attorneys' fees incurred in defending against Boosalis's foreclosure claim. Byrd argued that, as the prevailing party on that claim, he was entitled to attorneys' fees under Civil Code section 1717, which authorizes an award of fees to the prevailing party on any "causes of action sounding in contract and based on a contract containing an attorney fee provision." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 617 (*Santisas*); Civ. Code, § 1717, subd. (a).) Byrd cited as the operative contractual attorneys' fee provision an indemnity provision of the lease agreement, to which the Byrds, Patterson, Sharer, and Boosalis were all made party via the 2016 addendum. That provision reads: "If the Tenants [(the Byrds)] [are] in breach of this Agreement, and the Landlords [(Patterson and Sharer)] find[] it necessary to enforce this Agreement, or

9

collect rental or other damages, through an attorney or in a legal action, the Landlords shall be indemnified by the Tenants for any reasonable attorneys' fees and out-of-pocket costs which in any way relate to, or were precipitated by, the breach of this Agreement by the Tenants."

In support of his motion, Byrd attached a declaration by his former attorney, Scott Radcliffe, attesting that Radcliffe served as counsel for the Byrds from January 2020 until July 2022 and that, after withdrawing, he continued to advise Justin Byrd in relation to defending the claims against him. Radcliffe generally described the services and assistance he provided, claimed a total of 305.6 hours, but attached no billing records. Consistent with Radcliffe's declaration, Byrd sought a total of $106,690 in fees incurred in relation to the foreclosure cause of action.

Boosalis opposed Byrd's motion based on the lack of supporting billing records. The trial court continued the hearing on Byrd's motion and ordered him to file billing records and a supplemental declaration from Radcliffe. Two weeks after the deadline, Byrd filed Radcliffe's supplemental declaration with 26 pages of billing records attached, seeking the same amount of fees. Byrd contemporaneously filed a request for a continuance, which the trial court granted. Four court days before the continued hearing, Boosalis filed a supplemental opposition, arguing in part that Byrd's attorneys' fee request should be denied because Civil Code section 1717 does not authorize such fees for parties, like the Byrds, who have been voluntarily dismissed from an action.

After a hearing, the trial court issued a tentative decision granting Byrd's motion for attorneys' fees in full, without an explanation of its reasons. The tentative decision stated that the court, in its discretion, declined to consider Boosalis's opposition, which it found to have been untimely.

Byrd filed a supplemental reply brief, and thereafter the trial court adopted the tentative ruling as final. The court's minute order states: "Cross-defendant Justin Byrd's

10

motion for attorney's fees and costs is GRANTED in the amount of $106,690.00.  (Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(10)(A); Civ. Code 1717, subd. (a); Cal. Rules of Court, rule 3.1702; *D & J, Inc. v. Ferro Corp.* (1986) 176 Cal.App.3d 1191, 1194; Radcliffe Sup. Decl., ¶¶ 3 - 6, Exhibit A; Tentative Decision, April 4, 2023, adopted April 27, 2023, p. 6, ll. 20 - 25; see Formal Minute Order, March 10, 2023.)"

Boosalis timely filed a notice of appeal from this order.

B.

Boosalis contends that the trial court erred in various ways by awarding attorneys' fees to Byrd.  He argues that the fee award was barred by Civil Code section 1717, subdivision (b)(2), due to the Byrds' voluntary dismissal; that Byrd was not entitled to fees for the period when he was self-represented; that Byrd waived his right to fees by filing the billing records late and not filing a noticed motion; and that any fees awarded should be reduced for time not spent on the judicial foreclosure claim.  We need only address his argument that the fee award was barred by Civil Code section 1717, subdivision (b)(2), as we find this contention meritorious.

Although we typically review a post-trial award of attorneys' fees for abuse of discretion, here we are called upon to address the legal basis for the fee award, a question of law subject to de novo review.  (*Andrade v. Western Riverside Council of Governments* (2024) 99 Cal.App.5th 1020, 1025; *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 821 (*Brown Bark*).)

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  (Code Civ. Proc., § 1032, subd. (b).)  "Attorney fees are not normally recoverable costs.  Rather, '[u]nder what is known as the "American rule," each party to a lawsuit must ordinarily pay his or her own attorney fees.' "  (*Riverside Mining Limited v. Quality Aggregates* (2024) 104 Cal.App.5th 269, 275.)  There is an exception, however, "when the party entitled to

11

costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." (*Santisas*, *supra*, 17 Cal.4th at p. 606; see Code Civ. Proc., § 1033.5, subd. (a)(10) [attorneys' fees allowable as costs under § 1032 when authorized by "Contract," "Statute," or "Law"].)

Civil Code section 1717 "governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 237.) The statute provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees." (Civ. Code, § 1717, subd. (a).) "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas*, *supra*, 17 Cal.4th at p. 610.) When language in a contract provides a right to attorneys' fees " 'to one party but not to the other,' " "the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not' ([Civ. Code,] § 1717, subd. (a))." (*Santisas*, at p. 611.)

Civil Code section 1717 also specifies that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." (Civ. Code, § 1717, subd. (b)(2).) "Civil Code section 1717, subdivision (b)(2), reflects a determination that the American rule that parties bear their own attorney fees should not change where a defendant in a contract action prevails by voluntary dismissal." (*Riverside Mining Limited v. Quality Aggregates*, *supra*, 104 Cal.App.5th at p. 278.)

Boosalis's opening brief takes as a given that the trial court awarded Byrd fees under Civil Code section 1717, a position supported by the court's citation to that statute in both its tentative ruling and final order. He argues this was error because Civil Code section 1717, subdivision (b) precludes the award of attorneys' fees to those, like Byrd, who prevail on a contract claim by way of voluntary dismissal. Respondents dispute the premise that fees were awarded under Civil Code section 1717, arguing that the foreclosure claim was "an equitable proceeding," not one sounding in contract, and therefore the fees were awarded not under Civil Code section 1717 but under the general costs recovery statutes, Code of Civil Procedure sections 1032 and 1033.5, which do not bar fee awards in cases of voluntary dismissal. (Code Civ. Proc., § 1032, subd. (a)(4); *Santisas*, *supra*, 17 Cal.4th at p. 606.) We conclude that Boosalis has the better argument.

Civil Code section 1717 "applies only to 'action[s] on a contract.' " (*Khan v. Shim* (2016) 7 Cal.App.5th 49, 56, quoting Civ. Code, § 1717, subd. (a).) " 'To determine whether an action is on the contract, we look to the complaint and focus on the basis of the cause of action. [Citations.] Any action that is based on a contract is an action on that contract regardless of the relief sought.' " (*Yoon v. CAM IX Trust* (2021) 60 Cal.App.5th 388, 392-393; see also *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486 [" '[O]n a contract' does not mean only traditional breach of contract causes of action"].) For instance, equitable claims for declaratory and injunctive relief fall within the ambit of Civil Code section 1717 if they are based on a contract. In *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, the Court of Appeal affirmed an attorneys' fee award under Civil Code section 1717, finding causes of action for declaratory and injunctive relief and to quiet title were " 'action[s] on a contract,' " even though "the remedy sought . . . was equitable." (*Id.* at pp. 346-348.) The declaratory relief claim "sought a declaration that [an underlying] promissory note

13

must be cancelled because it had been paid in full, and that [a related] deed of trust must be reconveyed because the foreclosure violated the terms of the deed of trust." (*Id.* at pp. 347-348.) Similarly, the claim for injunctive relief was based, at least in part, on the assertion "that foreclosure violated the terms of the trust deed," and the quiet title claim "sought to enforce the terms of the deed of trust requiring a reconveyance of title upon satisfaction of the underlying debt." (*Id.* at p. 348.) Thus, notwithstanding the equitable nature of the remedy sought, the court found the claims "were still actions 'on the contract,' i.e., the note and deed of trust." (*Id.* at p. 347.)

The same reasoning leads us to conclude that Boosalis's judicial foreclosure claim was "on a contract" within the meaning of Civil Code section 1717. Boosalis's cross-complaint alleged, within the judicial foreclosure cause of action, that Patterson and Sharer were "in default of their obligations to [him] under the Boosalis Deed of Trust" and that Boosalis "[wa]s therefore entitled to enforce his rights and remedies under the Boosalis Deed of Trust" through judicial foreclosure. (Some capitalization omitted.) In the same cause of action, Boosalis also alleged that the Byrds were "in default of their obligations to [him] under the Addendum to Rent to Own Lease Agreement and Assignment, having failed to make any payments when due upon sale of the Property." Although respondents are correct that Boosalis's judicial foreclosure action was an equitable proceeding (see *Majestic*, *supra*, 107 Cal.App.5th at p. 423), that does not change the fact that the action was based on claimed breaches of the deed of trust and lease agreement or the fact that Boosalis was seeking to enforce the terms of those agreements. As explained in *Kachlon v. Markowitz*, *supra*, 168 Cal.App.4th at page 347, "[i]n determining whether an action is 'on the contract' under [Civil Code] section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." Because Boosalis's foreclosure claim was based on alleged breaches of asserted contractual obligations and sought to enforce the terms of the contracts at issue, we

14

conclude that it was an action "on a contract." (See *Kachlon*, at pp. 346-348; *Yoon v. CAM IX Trust*, *supra*, 60 Cal.App.5th at pp. 391, 393.)

As an action on a contract under Civil Code section 1717, Byrd's request for fees was subject to that statute's bar on recovery in cases of voluntary dismissal. (Civ. Code, § 1717, subd. (b)(2).) A dismissal is "voluntary" within the meaning of Civil Code section 1717, subdivision (b)(2) when it was "entered at the request of a party." (*D & J, Inc. v. Ferro Corp.*, *supra*, 176 Cal.App.3d at p. 1194; *Marina Glencoe, L.P. v. Neue Sentimental Film AG* (2008) 168 Cal.App.4th 874, 878 ["The dismissal in this case, having been entered at respondent's request, is voluntary"].) "It is not the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one. Rather, the key is the plaintiff's role, if any, in bringing it about." (*D & J, Inc.*, at p. 1194.)

Here, there is no dispute that the Byrds were dismissed at Boosalis's request. The parties nevertheless debate whether Boosalis's dismissal of the Byrds from his foreclosure cause of action was truly "voluntary." In respondents' view, it was not, because Boosalis dismissed his claim after the trial court had indicated that it was prepared to grant a motion for nonsuit in Byrd's favor. In support, they cite *Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, which addressed when in a proceeding a plaintiff loses the right to voluntarily dismiss a claim without prejudice under Code of Civil Procedure section 581, subdivision (b)(1). That provision states that an "action may be dismissed . . . [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial, upon payment of the costs, if any." (Code Civ. Proc., § 581, subd. (b)(1).) After surveying appellate authority, *Franklin Capital* concluded that "[w]hen the dismissal could be said to have been taken [¶] (a) in the light of a public and formal indication by the trial court of the legal merits of the case, or [¶] (b) in the light of some procedural dereliction by the dismissing

15

plaintiff that made dismissal otherwise *inevitable*, then the voluntary dismissal is ineffective." (*Franklin Capital*, at p. 200.) According to respondents, the trial court here publicly and formally indicated that Boosalis's suit lacked merit at least as to the Byrds, and thus Boosalis's dismissal does not qualify as "voluntary."

We are not persuaded by this argument, first, because *Franklin Capital* dealt with a party's ability to voluntarily dismiss before "the actual commencement of trial" under Code of Civil Procedure section 581, subdivision (b). (*Franklin Capital Corp. v. Wilson*, *supra*, 148 Cal.App.4th at pp. 199-205.) Here, there is no dispute that trial had commenced when Boosalis sought dismissal, making the request subject to Code of Civil Procedure section 581, subdivision (e), not subdivision (b). (Code Civ. Proc., § 581, subd. (e) ["After the actual commencement of trial, the court shall dismiss the complaint, or any causes of action asserted in it, in its entirety or as to any defendants, with prejudice, if the plaintiff requests a dismissal, unless all affected parties to the trial consent to dismissal without prejudice or by order of the court dismissing the same without prejudice on a showing of good cause"].) Accordingly, this case does not involve the question whether Boosalis's right to voluntarily dismiss under Code of Civil Procedure section 581, subdivision (b) had been cut off. (*Shapira v. Lifetech Resources, LLC* (2018) 22 Cal.App.5th 429, 436, fn. 4 ["Because this case involves neither a dismissal without prejudice nor issues involving the commencement of trial, much of [*Franklin Capital*'s] 'complex body of case law' is inapplicable here"]; see also *Marina Glencoe, L.P. v. Neue Sentimental Film AG*, *supra*, 168 Cal.App.4th at p. 877 [Civ. Code, § 1717, subd. (b)(2) "contains no temporal limitation; it 'bars recovery of [§] 1717 attorney fees regardless of when the dismissal is filed' "].)

Furthermore, in the trial court, the Byrds never argued that their voluntary dismissal was improper under Code of Civil Procedure section 581. Given that there was no challenge to the availability of voluntary dismissal and given that the Byrds' dismissal

16

was entered at Boosalis's request, Civil Code section 1717, subdivision (b)(2) applied. (*D & J, Inc. v. Ferro Corp.*, *supra*, 176 Cal.App.3d at pp. 1193, 1195 [dismissal of action "at the request of the plaintiff" after commencement of trial is " 'voluntary,' thus precluding an award of attorneys['] fees under Civ[.] Code [§] 1717"; finding plaintiff's oral dismissal request, during examination of first trial witness, voluntary for purposes of Civ. Code, § 1717, subd. (b)(2)]; *Marina Glencoe, L.P. v. Neue Sentimental Film AG*, *supra*, 168 Cal.App.4th at p. 878 [dismissal was voluntary, "having been entered at [the] respondent's request"].)

Byrd sought and was awarded attorneys' fees following a bifurcated trial on a single cause of action for judicial foreclosure. That cause of action cannot be both an action "on a contract" and not. So this is not a scenario where attorneys' fees, though barred for the contract claims, could have been awarded on remaining noncontract claims under the general costs statutes, as in *Santisas*, *supra*, 17 Cal.4th at pages 602, 615, 617, and 619. And even if we were to construe the judicial foreclosure cause of action as a noncontract claim beyond the scope of Civil Code section 1717, as respondents argue, Byrd still would not be entitled to recover attorneys' fees incurred in defending that claim.

Attorneys' fees are recoverable as costs under Code of Civil Procedure section 1033.5 for claims not sounding in contract if the terms of a contractual fee provision are broad enough to cover those noncontract claims, and the provision "expressly identifies [the party seeking fees] as a party entitled to its benefits." (*Brown Bark*, *supra*, 219 Cal.App.4th at p. 828; Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(10).) The only attorneys' fees provision respondents cite is the indemnity provision of the lease agreement discussed above. That provision states that if "*the Landlords* [(Patterson and Sharer)] find[] it necessary to enforce this Agreement . . . through an attorney or in a legal action, *the Landlords* shall be indemnified by the Tenants for any reasonable attorneys'

17

fees." (Italics added.) No part of this contractual provision identifies the Byrds (the tenants) as a party entitled to attorneys' fees. As written, this is a unilateral fee provision in favor of Patterson and Sharer. And Civil Code section 1717 "does not make a unilateral fee provision reciprocal on tort or other noncontract claims." (*Brown Bark*, at p. 820.) The right to recover fees on noncontract claims based on a contractual fee provision "depends solely on the contractual language." (*Ibid.*) Respondents argue that this is a broadly written fee provision that would encompass fees for noncontract claims, pointing to the reference to "reasonable attorneys' fees and out-of-pocket costs which in any way relate to, or were precipitated by, the breach of this Agreement." Regardless of what types of claims this provision might cover, it does not "expressly identif[y]" Byrd as a party entitled to its benefits. (*Id.* at p. 828.) Accordingly, without the assistance of Civil Code section 1717, subdivision (a), it does not entitle him to attorneys' fees under the general costs statutes.

Because Byrd was not entitled to attorneys' fees for defending the judicial foreclosure cross-claim, whether construed as a contract claim or noncontract claim, we reverse the award of attorneys' fees to him.

## DISPOSITION

The judgment of April 27, 2023 is amended to reflect the dismissal with prejudice of the first, third, fourth, and fifth causes of action of appellant Gus Boosalis's cross-complaint, nunc pro tunc as of April 27, 2023. The judgment as amended is affirmed. The order granting respondent Justin Byrd's motion for attorneys' fees incurred in defending the cross-claim for judicial foreclosure is reversed. The parties shall bear their own costs on appeal.

/s/
_____
FEINBERG, J.

We concur:

/s/
_____
HULL, Acting P. J.

/s/
_____
ROBIE, J.

19